**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**


KENTUCKY SPEEDWAY, LLC      :      CASE NO:
     :
          Plaintiff,      :      1:06-mc-00203-KAJ
     :
         v.      :
     :
NATIONAL ASSOCIATION      :
FOR STOCK CAR AUTO      :
RACING, INC., ET AL.,      :
     :
         Defendants.      :


**BRIEF OF NON-PARTY DOVER MOTORSPORTS, INC.**
**(1) IN SUPPORT OF DOVER'S MOTION TO STRIKE AND**
**(2) IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**
**AGAINST THIRD PARTY DOVER MOTORSPORTS INC.**


Dated: December 12, 2006           Richard G. Placey (DE I.D. No. 4206)
                                  Richard M. Donaldson (DE I.D. No. 4367)
                                  MONTGOMERY, McCRACKEN,
                                   WALKER & RHOADS, LLP
                                  300 Delaware Avenue, Suite 750
                                  Wilmington, DE 19801
                                  Tel: (302) 504-7880
                                  Fax: (302) 504-7820

                                  Attorneys for Non-Party
                                  Dover Motorsports, Inc.

Of Counsel:

Klaus M. Belohoubek, Esquire
Senior Vice President and General Counsel
Dover Motorsports, Inc.
Concord Plaza
3505 Silverside Road
Plaza Centre Bldg., Suite 203
Wilmington, DE 19810


2137830v1

# TABLE OF CONTENTS

**Page**

I.      STATEMENT OF NATURE AND STAGE OF THIS PROCEEDING............................ 1

II.     SUMMARY OF ARGUMENT ................................................................................... 1

III.    FACTUAL STATEMENT ........................................................................................... 2

    A.      The Ohio Subpoena................................................................................................ 2

    B.      The Kentucky Motion for "Nationwide Service of Subpoenas" ........................... 3

    C.      Plaintiff's First Delaware Subpoena .................................................................... 3

    D.      Plaintiff's Second Delaware Subpoena and the Efforts to Reach
        Agreement............................................................................................................... 4

    E.      Plaintiff Reverts to the First Delaware Subpoena................................................. 5

    F.      Plaintiff Moves to Compel but Refuses to Serve the Complete Motion............... 6

IV.     ARGUMENT ................................................................................................................ 7

    A.      The Motion to Strike Should be Granted, and All Redacted Portions of the
        Motion to Compel Should be Stricken................................................................... 7

        1.      The Redacted Portions of the Motion to Compel Should Be
            Stricken Because Plaintiff has Failed to Properly Serve that Motion
            Under Federal Rule of Civil Procedure 5 ................................................. 7

        2.      The Redacted Portions of Motion to Compel Should Be Stricken
            Because Failure to Serve Dover with a Complete Motion to
            Compel Violates Dover's Rights to Due Process ..................................... 9

    B.      The Motion to Compel Should be Denied ........................................................... 11

        1.      Legal Standard ....................................................................................... 11

        2.      The (Unredacted) Arguments Made in the Motion to Compel are
            Bald Conclusions That Should be Rejected Out of Hand........................ 13

        3.      Should the Court wish to Examine Them, Many of the Categories
            of Items Sought by Plaintiff are Improper ............................................... 13

        4.      Plaintiff has Committed Multiple Violations of Confidentiality
            Obligations to Dover in the Past, and Should Not be Allowed
            Access to any of Dover's Confidential Information ................................ 17

    C.      The Court Should Enforce Plaintiff's Obligations Under Rules 45, 11 and
        26(g)..................................................................................................................... 18

V.      CONCLUSION........................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## CASES

American Int'l Life Assurance Co. v. Vasquez, No. 02 Civ. 141,
2003 WL 548736 (S.D.N.Y. Feb. 25, 2003)..............................................20

Andreas v. Volkswagen of America, Inc., 336 F.3d 789 (8th Cir. 2003)......................10

Andriz-Sprout-Bauer v. Beazer East, 174 F.R.D. 609 (E.D. Pa. 1997).........................12

Cambridge Plating Co., Inc. v. Napco, Inc., 85 F.3d 752 (1st Cir. 1996) ...............10, 12

Chemetron Corp. v. Jones, 72 F.3d 341 (3d Cir. 1995).................................................9

Concord Boat Corp. v. Brunswick Corp., 159 F.R.D. 44 (S.D.N.Y. 1996)............15, 18

Guenther v. Comm'r of Internal Revenue, 889 F.2d 882 (9th Cir. 1989).....................10

In re Sleepmaster Finance Corp., 284 B.R. 411 (Bkrtcy. D.Del. 2002) ......................10

LaChance v. Erickson, 522 U.S. 262 (1998) ...................................................................9

Miller v. French, 530 U.S. 327 (2000)............................................................................9

Moon v. SCP Pool Corp., 232 F.R.D. 633 (C.D. Cal. 2005)..................................12, 14

Petersen v. Chicago Great W. Ry. Co., 3 F.R.D. 346 (D. Neb. 1943).............................8

Sullivan v. Barnett, 139 F.3d 158 (3d Cir. 1998) ...........................................................9

Taylor v. Slick, 178 F.3d 698 (3d Cir. 1999)...................................................................9

Night Hawk Ltd. v. Briarpatch Ltd., LP, 2003 WL 23018833 (S.D.N.Y. 2003) .........20

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. V ......................................................................................................9

## STATUTES

15 U.S.C. §22....................................................................................................................3

15 U.S.C. §23....................................................................................................................3

2137830v1

**TABLE OF AUTHORITIES**
(continued)

**Page**

**RULES**

Fed. R. Evid. 615 ................................................................................................................ 10

Fed. R. Civ. P. 5 .................................................................................................................... 7

Fed. R. Civ. P. 7 .................................................................................................................. 10

Fed. R. Civ. P. 11 ......................................................................................................... passim

Fed. R. Civ. P. 26 ......................................................................................................... passim

Fed. R. Civ. P. 45 ......................................................................................................... passim

2137830v1

## I.    STATEMENT OF NATURE AND STAGE OF THIS PROCEEDING

This brief is submitted by Third-Party and Respondent Dover Motorsports, Inc.

("Dover") in support of its contemporaneously filed Motion to Strike the Redacted Portions of

Plaintiff's Motion to Compel, and in opposition to Plaintiff's Motion to Compel Against Third

Party Dover Motorsports, Inc. (D.I. 1) ("Motion to Compel").

This proceeding in Delaware arises out of Plaintiff Kentucky Speedway Inc.'s

("Plaintiff") efforts to issue subpoenas to various non-parties arising from an antitrust action

pending in Kentucky, captioned <u>Kentucky Speedway, LLC v. National Association of Stock Car</u>

<u>Auto Racing, Inc., et al.</u>; Civil Action No. 2:05-cv-00138-WOB (E.D. Ky.) (the "Kentucky

Litigation").[1]  The two subpoenas served by Kentucky in Delaware are now Plaintiff's **third and**

**fourth** unduly expensive and burdensome subpoenas to which Dover Motorsports, Inc.

("Dover") has been required to respond.

## II.    SUMMARY OF ARGUMENT

This matter now comes before the Court on Plaintiff's motion to compel compliance with

the subpoenas served in Delaware.  Dover opposes such motion and submits that (1) since

Plaintiff refuses to serve Dover with the redacted portions of the motion, such portions should be

stricken and may not be considered by the Court, (2) the Motion to Compel should be denied,

(3) pursuant to Rules 45(c), 11 and 26(g), Plaintiff should be required to reimburse Dover for all

of its expenses and costs in responding to Plaintiff's various subpoenas.

---

[1] A copy of the docket in the Kentucky Litigation is in the Appendix (App. 1-32).

**III.     FACTUAL STATEMENT**

As noted above, Plaintiff has repeatedly burdened Dover with unnecessary and improper subpoenas and filings, only to withdraw many of them once Dover was required to expend resources on a response.  These subpoenas and filings include:

**A.     The Ohio Subpoena**

On or about April 14, 2006, Plaintiff attempted to issue a subpoena relating to the Kentucky Litigation from the Southern District of Ohio to Dover at its place of business in Dover, Delaware.  A copy of this Ohio subpoena, which sought compliance in Ohio, is in the Appendix (App. 33-45).  It is undisputed that Dover is far more than 100 miles from any part of the Southern District of Ohio.  <u>It is also undisputed that there is no action whatsoever pending in Ohio</u>; Plaintiff apparently issued this subpoena from Ohio because its main counsel is located there and thus that was the forum most convenient for Plaintiff's counsel.

Upon receipt of the subpoena, counsel for Dover contacted Plaintiff's Ohio counsel and requested that the Ohio subpoena be withdrawn and that a valid Delaware subpoena be issued in its place.  Counsel for Dover even offered to accept service of such a (proper) subpoena in order to expedite the process.  Plaintiff's counsel refused and refused to withdraw the Ohio subpoena.

Accordingly, on May 8, 2006, Dover was forced to serve protective Rule 45 objections to the Ohio subpoena putting on record its objections to that subpoena so as to avoid waiver arguments.  A copy of those objections – made necessary because Plaintiff forced Dover to waste time and resources on a plainly improper subpoena – is also in the Appendix.  (App. 46-49). This was plainly an undue expense and burden on Dover in violation of the applicable rules (45 and 11).

-2-

### B.    The Kentucky Motion for "Nationwide Service of Subpoenas"

Plaintiff then filed a motion in the Kentucky Litigation itself, seeking leave to serve third party witnesses anywhere in the country with subpoenas issued from Kentucky.  See Docket Item 105 in the Kentucky Litigation (copy of motion at Appendix 50-53).  That motion was filed after Dover offered to accept service in Delaware.  It sought to require Dover (and other third party witnesses) to respond to subpoenas and litigate any disputes or issues that arise from those subpoenas in a jurisdiction far from home, with all of the additional expense and costs necessitated by having to do so.

That motion was baseless in the extreme, and was ultimately withdrawn.  In it, plaintiff sought the right to make nationwide service of subpoenas on the basis of (a) 15 U.S.C. §22 – which applies to service of a complaint on a defendant, and not to subpoenas at all, and (b) 15 U.S.C. §23, which does apply to subpoenas – but only to those issued in actions brought by the federal government.

Dover and others responded to that motion, pointing out that the relief sought was not even permitted by the above statutes – those upon which Plaintiff was purportedly relying in the motion.  See Docket Items 111 and 112 in the Kentucky Litigation (a copy of Dover's response is at Appendix 54-59).

After putting Dover to the expense of responding to this baseless motion in Kentucky, Plaintiff withdrew it.  See Docket Items 113 and 114 in the Kentucky Litigation (App. 24-25).  Thus, Dover was forced to undertake the undue expense and burden of this response as well.

### C.    Plaintiff's First Delaware Subpoena

Thereafter, on June 8, 2006 Plaintiff finally served a Delaware subpoena on Dover (see Motion to Compel Exhibit 1) (the "First Delaware Subpoena").  This is the subpoena as to which Plaintiff now seeks to compel compliance.  This subpoena demanded that non-party Dover

-3-

respond to 34 requests (NOT including subparts), and that it produce documents from 1992 to the present – a period of over 14 years.  As will be explained in the Argument section below, this subpoena is improper for a variety of reasons, including in particular because the documents sought can be obtained from parties to the litigation and because the requests made are breathtakingly overbroad and vague and thus impose unreasonable and undue burden and expense on a non-party.  Taken as a whole, or broken down by request, this subpoena was and is yet another undue burden and expense and again violates the applicable rules.

In light of this, Dover served a Rule 11 "warning" motion upon Plaintiff (see Motion to Compel, Exhibit 2).  Dover requested that Plaintiff withdraw this subpoena and, if after obtaining documents from the parties and the public Plaintiff believes that certain additional documents might be needed, that Plaintiff serves a narrowly tailored subpoena upon Dover.  Dover's counsel again offered to accept service of such a subpoena issued in Delaware.

### D.    Plaintiff's Second Delaware Subpoena and the Efforts to Reach Agreement

On July 7, 2006, Plaintiff did make some efforts to respond to the concerns raised by Dover and in Dover's Rule 11 motion.  Plaintiff withdrew the First Delaware Subpoena and served a new subpoena dated July 7, 2006, seeking 9 categories of documents (the "Second Delaware Subpoena").  A copy of this subpoena and the July 7, 2006 e-mail withdrawing the First Delaware Subpoena is at Appendix 60-68.  The 9 categories in this Subpoena are more narrow than, but roughly correspond to, Items 1-9 of the 22 item list of categories on which Plaintiff is proceeding.  Exhibit 3 to Motion to Compel.

While Dover believed that this Subpoena also violated the applicable rules, and so notified Plaintiff, at least this subpoena was narrower.  Accordingly, Dover attempted to negotiate a resolution with Plaintiff, hoping that Plaintiff was acting in good faith.  Much

-4-

negotiation thereafter followed in an attempt to reach an agreed production given the narrower subpoena.

On August 18, 2006, after a substantial exchange of positions and discussion between counsel, it seemed that a resolution was possible, and perhaps within reach.  See e-mail exchange (beginning August 3, 2006 and ending August 18, 2006) attached as Exhibit 6 to the Motion to Compel.

### E.    Plaintiff Reverts to the First Delaware Subpoena

However, after these efforts were made by Dover to reach agreement based on the Second Delaware Subpoena, on September 6, 2006 Plaintiff abruptly reverted to seeking to enforce the First Delaware Subpoena.  At that time, Plaintiff informed Dover that it now wanted production in accordance with the First Delaware Subpoena (which had been withdrawn, albeit without prejudice);[2] Plaintiff did reduce the number of items from the original 34 to 22.  A copy of the September 6, 2006 e-mail and the attached "narrower" categories as to which Plaintiff is now proceeding is Exhibit 3 to the Motion to Compel.

The explanation given for this turn of events was that certain "Confidential Documents" demonstrated that Plaintiff needed to proceed in this way.  All efforts to discuss this were met with the conclusory claim that the confidential materials justified Plaintiff's position.  In an effort to resolve the dispute, Dover signed on to be bound by the Confidentiality Order as to any such material it might be given, but Plaintiff ultimately claimed it still could not provide the information.  In effect, Plaintiff reverted to its earlier overbroad subpoena, and then largely

---

[2] All parties agree that the issuance of the Second Delaware Subpoena and discussions were without prejudice; nevertheless, Dover incurred significant expense in pursuing them on the basis of the Second Delaware Subpoena, all of which was rendered a waste when Plaintiff abandoned the Second Delaware Subpoena.

refused to budge claiming that its position was justified by "Confidential Documents" that Dover could not see, discuss or negotiate about.

### F.    Plaintiff Moves to Compel but Refuses to Serve the Complete Motion

On or about October 24, 2006, Plaintiff filed the Motion to Compel.[3]  However the central part of Plaintiff's argument in that motion (paragraphs 15 to 17 and the associated exhibits) was redacted based allegedly on the Confidentiality Order in the Kentucky Litigation. That material has never been served on Dover.  Dover has asked for this material, early on and repeatedly, as can be seen from the October e-mails at Appendix 69-72.

In the time that has passed since the filing of the motion in October, Plaintiff could easily have addressed this issue – by seeking the Kentucky Court's permission to provide Dover with a copy of that material – but has refused to do so.  As late as December 1, Plaintiff again refused to take any action to get this material to Dover.  Thus, by Plaintiff's choice, Dover is put in the position of having to respond to arguments that it has not seen.  Moreover, this Court is put in the position of having to address the instant motion to strike the redacted portions, since it would be improper for any relief to be granted on the basis of arguments that Dover has not seen and cannot respond to.  This is a further waste, but is consistent with Plaintiff's actions in connection with the Ohio Subpoena (App. 33-49) and the "nationwide service" of Kentucky subpoenas motion (App. 50-59).

---

[3] Plaintiff also included a motion to transfer in its Motion to Compel, see ¶¶18-19.  After Dover was required to file a response (D.I. 9) to the transfer motion, Plaintiff then withdrew it.

## IV.    ARGUMENT

### A.    The Motion to Strike Should be Granted, and All Redacted Portions of the Motion to Compel Should be Stricken

As described above, Plaintiff has served Dover with a significantly redacted Motion to Compel.  This does not satisfy the service requirements of Federal Rule of Civil Procedure 5.  Moreover, failure to serve the redacted portions violates Dover's rights to due process because it deprives Dover of a meaningful opportunity to object to the motion.  For each of these reasons, Dover's Motion to Strike should be granted.

### 1.    The Redacted Portions of the Motion to Compel Should Be Stricken Because Plaintiff has Failed to Properly Serve that Motion Under Federal Rule of Civil Procedure 5

Since Rule 5 requires service of all motions, omission of the redacted portions is improper and the redacted portions should be stricken and not considered by this Court.

Rule 5 states:

> [E]very order required by its terms to be served, every pleading subsequent to the original complaint … every paper relating to discovery required to be served upon a party unless the court otherwise orders, <u>every written motion</u> other than one that may be heard <u>ex parte</u> and every written notice, appearance demand, offer of judgment, designation of record on appeal, <u>and similar paper</u> <u>shall be served upon each of the parties</u>.

Fed. R. Civ. P. 5(a).  <u>See also</u> Fed. R. Civ. P. 7 (requiring that the grounds for a motion be stated in order to allow a fair opportunity for a response).  The purpose of Rule 5 is "to insure a full exchange of the written communications among the litigants so that each party has a copy of all papers affecting him…."  Wright & Miller, <u>Federal Practice and Procedure</u> §1141 (Civil 3d ed. 2002) (referencing Rule 5's objective of a "full exchange of information" as stated in the Advisory Committee Notes to the Rule).

A Motion to Compel is not a motion that may be heard <u>ex parte</u>, and therefore it must be served on the parties. Where, as here, a motion is not properly served it is appropriate for the court to strike that motion. <u>See</u>, <u>e.g.</u>, <u>Petersen v. Chicago Great W. Ry. Co.</u>, 3 F.R.D. 346, 346-347 (D. Nebraska 1943) (plaintiff's motion for a new trial stricken because plaintiff failed to serve the motion).

Accordingly, the court should strike the Motion to Compel because it has not been properly served upon Dover – as to this, there is no dispute: Plaintiff simply refuses to serve the redacted portions. Moreover, the Motion to Compel notes that, to obtain the documents, Plaintiff must show that it has a "substantial need" for the 22 categories of documents that cannot be met otherwise. Motion to Compel, ¶8; Fed. R. Civ. P. 45(c)(3). However, in its Motion to Compel, Plaintiff has redacted the entire section entitled "Highly Confidential Documents Further Show The Substantial Need For This Subpoena." Rule 5 does not provide exceptions for parts of motions – the entire motion must be served so that there is a full exchange between the parties.

Moreover, Plaintiff could solve this problem by simply seeking permission from the Court in Kentucky to serve the redacted material, but Plaintiff has refused all requests that it do so. <u>See</u> App. 69-72. In that regard, Plaintiff's obstinate refusal to address this issue (which has put Dover to the expense of preparing a response without having the redacted portions of the motion) indicates that the redacted portions should be stricken <u>with prejudice</u>. Plaintiff has had every opportunity to resolve this before any response was due. Having refused to do so, Plaintiff should not now be permitted to put Dover to the expense of yet another response if Plaintiff does later resolve the redactions issue.

By redacting an entire section of the motion, Plaintiff has failed to comply with the service requirements of Rule 5 of the Federal Rules of Civil Procedure. It is impossible for

Dover to respond to the redacted portions.  Accordingly, those portions should be stricken with prejudice.

> ### 2.      The Redacted Portions of Motion to Compel Should Be Stricken Because Failure to Serve Dover with a Complete Motion to Compel Violates Dover's Rights to Due Process

In addition to being stricken for failure to comply with Rule 5, the Motion to Compel should also be stricken because failure to serve Dover with the complete motion violates Dover's rights to due process.

The due process clause of the Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. Amend. V.  The Supreme Court has stated that "[t]he core of due process is the right to notice and a meaningful opportunity to be heard."  LaChance v. Erickson, 522 U.S. 262, 266 (1998).  Due process "principally serves to protect the personal rights of litigants to a full and fair hearing."  Miller v. French, 530 U.S. 327, 350 (2000).

In applying these requirements, the Third Circuit has said that "[d]ue process requires notice that is 'reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for a response.'"  Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995) (quoting In re Eagle Bus Mfg., Inc., 62 F.3d 730, 735 (5th Cir. 1995)) (emphasis supplied).  To satisfy due process requirements the notice provided must be designed "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  Taylor v. Slick, 178 F.3d 698, 703 (3d Cir. 1999) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).  These requirements are somewhat flexible and call for "such procedural protections as the particular situation demands."  Sullivan v. Barnett, 139 F.3d 158, 172 (3d Cir. 1998) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

-9-

Ex parte communications that exclude a party from a discussion with the Court, such as the redacted portions of the Motion to Compel, often prejudice the excluded party's right to a fair hearing and violate their right to due process.  See Guenther v. Comm'r of Internal Revenue, 889 F.2d 882, 884 (9th Cir. 1989) (taxpayers did not have meaningful opportunity to be heard in civil fraud case when tax commissioner delivered an ex parte motion to tax court judge).[4]  Therefore when there is an ex parte communication, due process requires the court to consider whether and to what extent the ex parte communication has unfairly prejudiced the excluded party.  Id.

The requirement of due process and the principles behind it have been used to develop several procedural protections in order to guarantee fairness in the legal system, including Federal Rule of Civil Procedure 5 discussed above.  The objectives of due process are also implicated in Federal Rule of Civil Procedure 7 – the motions rule.  Rule 7 states that motions shall be written and "shall state with particularity the grounds therefore."  Fed. R. Civ. P. 7(b)(1).  "The purpose of Rule 7's particularity requirement is to give notice of the basis for the motion to the court and the opposing party so as to avoid prejudice, 'providing that party with a meaningful opportunity to respond and the court with enough information to process the motion correctly.'"  Andreas v. Volkswagen of America, Inc., 336 F.3d 789, 793 (8th Cir. 2003) (quoting Registration Control Sys., Inc. v. Compusystems, Inc., 922 F.2d 805, 807 (Fed. Cir. 1990)); see also Cambridge Plating Co., Inc. v. Napco, Inc., 85 F.3d 752, 760 (1st Cir. 1996).[5]

---

[4] The Delaware Rules of Professional Conduct also prohibit ex parte communications.  Under Rule 3.5, a lawyer may not communicate ex parte with a judge unless authorized to do so by law or court order.  As such, impermissible ex parte contact should be ignored by the court.  See In re Sleepmaster Finance Corp., 284 B.R. 411, 414 (Bkrtcy. D.Del. 2002) (if a party wants the court to take action they should file a pleading or motion and give notice to all interested parties).  In that regard, whatever the Kentucky confidentiality order which Plaintiff cites may prohibit, it cannot and does not authorize filings in this Court which are not accompanied by proper service.

[5] Similarly, Federal Rule of Evidence 615, which allows a court to exclude witnesses from the courtroom, provides an exception for certain people.  Fed. R. Evid. 615.  This exception does not allow the court to exclude a person whose presence is shown by a party to be essential to the presentation of the party's cause.  Id.  This exception to Rule 615 exists because due process requires that the court allow the parties to hear the evidence against them.  See
Continued…

-10-

Accordingly, the principles of due process require that the redacted portions of the Motion to Compel be stricken.  Dover is prejudiced by the redactions because it has not been provided with notice of the claimed basis for Plaintiff's "substantial need" for Dover's documents.  Moreover, it goes without saying that Dover has not been given a meaningful opportunity to present its objections to the motion.  Instead of reasonably conveying all the required information, the redacted Motion to Compel leaves Dover with no way to test whether or not the documents requested are really relevant based on the "highly confidential" documents, whether Kentucky can get the documents another way, or whether Kentucky has a substantial need for the documents.  Simply put, keeping from Dover the reasons that Plaintiff claims justify production violates Dover's rights to due process.

Accordingly, Dover has not been afforded adequate notice of Plaintiff's Motion to Compel and its purported need for Dover's documents, thereby depriving Dover of an opportunity to meaningfully respond to the Motion to Compel.  Accordingly, due process requires that the redacted portions of the Motion to Compel be stricken with prejudice and not be considered by the court.

**B.    The Motion to Compel Should be Denied**

**1.    Legal Standard**

While the Motion to Compel cites cases involving motions to quash for the proposition that parties attempting to quash a subpoena must carry certain burdens, Motion to Compel ¶¶7, 14, this is not a motion to quash and those cases are irrelevant.  Plaintiff has served a subpoena

----

….Continued

id. at Advisory Committee Notes of the 1972 Proposed Rules ("Exclusion of persons who are parties would raise serious problems of confrontation and due process.").

(actually several), and Dover has objected.  Plaintiff is now moving under Rule 45(c)(2)(B) to

compel:

> If objection is made, the party serving the subpoena shall
> not be entitled to inspect and copy the materials or inspect the
> premises except pursuant to an order of the court by which the
> subpoena was issued.  If objection has been made, the party
> serving the subpoena may, upon notice to the person commanded
> to produce, move at any time for an order to compel the
> production.  Such an order to compel production shall protect any
> person who is not a party or an officer of a party from significant
> expense resulting from the inspection and copying commanded.

Id.  In this circumstance, once an objection is raised, the party seeking discovery (Plaintiff here)

generally bears the burden of showing its entitlement to the material sought, Andriz-Sprout-

Bauer v. Beazer East, 174 F.R.D. 609, 631 (E.D. Pa. 1997), although the party resisting

discovery typically comes forward with a showing on the burden.  Moreover, a court shall quash,

modify (or not enforce) a subpoena that creates an undue burden, and may do so if confidential

information is sought.  Fed. R. Civ. P. 45(c)(3).

Finally, Rule 45(c) requires the following of Plaintiff:

> (1)    A party … shall take reasonable steps to avoid
> imposing undue burden or expense on a person subject to that
> subpoena.  The court on behalf of which the subpoena was issued
> shall enforce this duty and impose upon the party or attorney in
> breach of this duty an appropriate sanction, which may include, but
> is not limited to, lost earnings and a reasonable attorney's fee.

Id. (emphasis added).  This is an affirmative duty to which Plaintiff is subject; Rules 11 and

26(g) impose similar requirements.  These rules, and Rule 45 in particular, require a party to

obtain documents from other parties and public sources where possible and to affirmatively act

to avoid imposing an undue burden on non-parties.  Moon v. SCP Pool Corp., 232 F.R.D. 633,

638 (C.D. Cal. 2005).  Moreover, when a party violates this requirement, the imposition of

-12-

sanctions is <u>mandatory</u>.  For the reasons set forth herein, Plaintiff's conduct and the subpoena violate these requirements.

> **2.**     **The (Unredacted) Arguments Made in the Motion to Compel are Bald Conclusions That Should be Rejected Out of Hand.**

The arguments made in the unredacted portions of the Motion to Compel (¶¶7-14) are simply conclusory claims that Plaintiff wants or needs the documents and/or that they are relevant.  Plaintiff makes no effort to address the specific requests/items sought – in groups, by category or otherwise – and offers no support for its bald conclusions.

Accordingly, these conclusory claims should be rejected out of hand.  It is not up to Dover (or the Court) to delve into Plaintiff's "narrowed" 22 categories of documents and try to ascertain how or why they may be relevant, why (or whether) the items have not been obtained from the parties and/or why Dover should have to bear the burden of figuring out how to look for such items (including, item 13:  "documents related to any anticompetitive activity by ISC or NASCAR").  Dover is not Plaintiff's unpaid research assistant and Plaintiff offers only conclusions, not reasons, to support its claimed entitlement to this material.  Since Plaintiff has not proffered reasons, the Motion to Compel should simply be denied out of hand.

> **3.**     **Should the Court wish to Examine Them, Many of the Categories of Items Sought by Plaintiff are Improper.**

Should the Court wish to look behind Plaintiff's conclusory claims that it needs and is entitled to the items sought, in fact that conclusion does not withstand scrutiny.

The particular problems with Plaintiff's request can be grouped and summarized as follows:

<u>Documents That Should be Obtained from the Parties</u>.  Many requests seek documents that NASCAR and ISC (the defendants in the Kentucky Action) have.  Such documents can be, and to the extent relevant and non-privileged, presumably have been obtained from those parties.

-13-

Even assuming the relevance of such documents, there is no reason to put Dover to the expense and disruption of looking for documents the parties already have and which presumably have been produced. Examples of these are Request No. 7[6] ("Documents showing communication between you and NASCAR and/or ISC"), No. 17 (Documents showing ownership interests in ISC or NASCAR). The subpoena is too long and burdensome for each such request to be discussed here, but the following requests are improper in their entirety for this reason: Nos. 7, 11, 12 and 17, and the following are overbroad for that reason: Nos. 1, 2, 3, 4, 8, 14, 15 and 16.

In light of the requirements of Rule 45 that subpoenas not impose an undue burden on third parties and that documents be obtained from parties where possible (so that non-parties are not burdened), Plaintiff should never have subpoenaed items it can and has obtained from the parties.[7] See Moon, 232 F.R.D. at 638 and cases cited (quashing subpoena because "plaintiffs can more easily … obtain the documents from defendant rather than from [the] non-party"). Plainly Plaintiff should have withdrawn such items when this problem was brought to its attention. See also Fed. R. Civ. P. 11 and Fed. R. Civ. P. 26(g). In any event, the Motion to Compel is without merit as to such documents and items.

Requests that are Overbroad and Vague. These requests are so broad, vague, or both, that responding to such requests would be unduly and unfairly burdensome and expensive for a non-party. In effect, Plaintiff seeks to make Dover perform expensive and specialized research to

---

[6] All of the citations herein to Plaintiff's Requests are to the 22 item request attached as Exhibit 3 to the Motion to Compel and as to which Plaintiff is now moving to compel. See Motion to Compel ¶1.

[7] Dover has repeatedly asked Plaintiff to explain its need to have Dover look for these documents, and/or whether it has obtained them from NASCAR and ISC. Dover has specifically pointed out, for example, that NASCAR knows who its owners are and that by definition NASCAR and ISC have copies of any communications sent to them, and asked Plaintiff to explain the need to burden a third party with a request for such items.

Plaintiff has never given an answer.

2137830v1

find those items. To take a few examples, Request No. 13 seeks to require Dover to determine

for Plaintiff what might constitute "documents related to any anticompetitive behavior by

NASCAR or ISC" and find and produce such documents. Request No. 14 seeks "All documents

reflecting any business relationship or financial arrangement between you and any racetrack not

owned by you." By this request, Plaintiff seeks to impose upon Dover the burden and expense of

searching for and collecting for its benefit anything relating to any business done with any

racetrack (worldwide apparently!) from 1992 to the present. Many other requests are similar,

such as No. 4 which seeks all documents about "market power … of NASCAR." Again, the

subpoena is too long and burdensome for each such request to be discussed here, but the

following requests are improper (in whole or in part) for this reason: Nos. 3, 7, 8, 9, 11, 13, 14,

17, 18, 19, 20, 21 and 22.

      Subpoena requests like these, which are so vague as to go well beyond relevant

information and/or which sweepingly pursue material, "run the greater risk of being found

overbroad and unreasonable." Concord Boat Corp. v. Brunswick Corp., 159 F.R.D. 44, 50-51

(S.D. NY 1996). Indeed, a subpoena which is on its face vague, overbroad, or both, like the

instant subpoena, "falls within Rule 45(c)(3)(A)'s prohibition on subpoenas that subject a

witness to an undue burden." Id.

      In light of the requirements of Rule 45, not to mention Rule 11 and Rule 26(g), Plaintiff

should never have issued such requests, and should have withdrawn or properly narrowed them

when this problem was brought to Plaintiff's attention.[8] See also Fed. R. Civ. P. 11 and Fed. R.

Civ. P. 26(g). Accordingly, the Motion to Compel is also without merit as to these items.

---

[8] In that regard, at Motion to Compel ¶ 13, Plaintiff now offers that it is willing to limit those requests in certain ways, such as to officers and directors. While Plaintiff protests that it is now willing to insert some limits, in reality it pays lip service in the motion to inserting limits but has never actually done so in the documents it sends to Dover.
Continued…

<u>Requests for Documents That are Not Relevant</u>.  These requests seek documents that are not even relevant to the Kentucky Action; in some instances Plaintiff has even admitted as much. For example, Request No. 10 seeks revenue and profit information, and the Motion to Compel says that Plaintiff needs the gross profit information for its damage analysis.  Motion to Compel ¶12.  However, Plaintiff repeatedly told the Court in Kentucky when arguing the motion to dismiss that "[t]here is not a single suggestion in the amended complaint that [Plaintiff] intends to recover its damages by looking at the profits any track currently makes."  Tr. of 1/12/06 Oral Argument in Kentucky Action, p. 41; lines 5-8 (App. 113).  <u>See also</u> p. 35, lines 16-20 of that transcript (App. 107) where <u>Plaintiff says it will not "measure our damages by profits being made by tracks currently hosting NEXTEL races</u>."  Based on these statements, Dover's financial information is being sought for competitive reasons, not for the litigation.  Given Plaintiff's statements to the Kentucky Court, which are judicial admissions, its efforts to obtain this financial information flagrantly violates Rule 26(g) as well as Rule 45.  Other requests that are improper in whole or in part for this reason are:  Nos. 3, 7, 8, 9, 11, 14, 16, 17, 18, 19, 20, 21 and 22 (all documents relating to the Teamsters Union).

<u>Requests that are so Broad as to Seek Confidential and Highly Proprietary Documents</u>. Certain requests are so broad that they seek privileged documents (such as communications with counsel about negotiations and the like), <u>see</u> Fed. R. Civ. P. 45(c)(3)(A)(iii), or documents that contain highly proprietary business information.  Examples of these include No. 10 (the financial information) most particularly, but also Nos. 1-3, 8, 9, 14, 15, 16, 17, 18 and 19 insofar as they reflect non-public commercial information.  These should have been withdrawn for this reason

….Continued

Indeed, that should have been done -- <u>in the subpoena or items list</u> -- before the subpoena was served, or at least when Plaintiff received the Rule 11 motion, and certainly before the Motion to Compel was filed.

and should never have been issued in the first place.  Fed. R. Civ. P. 45(c)(3)(A)(iii) and

45(c)(3)(B).  <u>See</u> <u>also</u> the following discussion of Plaintiff's violations of its confidentiality

obligations.

   Moreover, each of the individual requests cannot be considered in a vacuum.  The

subpoena as a whole simply magnifies each of these problems exponentially by lumping all of

such improper, expensive and burdensome demands together.  The result is a 22 item (not

including sub-parts) subpoena, seeking documents created over a <u>fourteen</u> <u>year</u> period.  Thus,

even putting aside the individual items (which are themselves improper), when considered as a

whole the subpoena violates Rule 45, as well as Rules 11 and 26.  Indeed, when the subpoena is

viewed as a whole, the Motion to Compel is exposed as meritless.

   **4.    Plaintiff has Committed Multiple Violations of Confidentiality
          Obligations to Dover in the Past, and Should Not be Allowed Access to
          any of Dover's Confidential Information**

   As noted, many of the requests seek information that is confidential and highly

proprietary (e.g., No. 10 and Nos. 1-3, 8, 9, 14-19).  Rule 45(c)(3)(B) requires the Court to

protect a non-party from disclosure of such information, and Plaintiff must make a showing of

substantial need for the material and protection for Dover in order to get it, which Plaintiff

attempts to do in a conclusory way at Motion to Compel ¶8.

   Putting aside the bald conclusions and general nostrums on which Plaintiff relies, there is

a significant problem with allowing this entity and/or any of its agents access to any confidential

information.  That problem is that <u>Plaintiff has a history of violating confidentiality restrictions</u>.

   The details of this are set forth in the Declaration of Klaus M. Belohoubek, Esquire

(Belohoubek Decl.) at Appendix 150-167.  In 2004, Plaintiff attempted to negotiate a transaction

with Dover.  In that regard, a confidentiality agreement was signed by Plaintiff that, among other

things, barred Plaintiff from disclosing the fact that discussions had taken place or the status of

-17-

the discussions or of any transaction.  Belohoubek Decl. ¶¶2-4 and Exhibit A (App. 150-51; 154-57).

Plaintiff, however, went on to violate these restrictions in the most flagrant way:  by talking to the press about it, in an apparent effort to manipulate the process, create a misleading impression about Dover, and use the press to create pressure.  Plaintiff's chairman told the press, and was quoted in several published articles that "Kentucky Speedway… was in negotiations [with] Dover Motorsports, but that the deal has fallen through."  Belohoubek Decl. ¶¶5-7 and Exhibit B (articles) (App. 151; 159-64).  The Court has no doubt seen circumstances in which manipulators use leaks and selective disclosures to try to pressure or force parties to make a deal on the manipulators' terms; on its face, this appears to be a classic case.  These improper disclosures caused Dover harm with investors, analysts, shareholders and employees, and appeared designed to do so.[9]  Id.

Plaintiff may claim that it violated a simple agreement, but that now there is an order in place in Kentucky, that counsel of record is involved and that the situation is different.  This is not so.  Breaches of confidentiality restrictions are notoriously hard to remedy – you just can't undo the disclosure (even if you can prove who did it and how it happened).  Moreover, an order in Kentucky that Dover would have to go to Kentucky to enforce is virtually useless to Dover, and presumably Plaintiff had counsel involved in the discussions in 2004 and 2005 as well.  Moreover, Plaintiff's multiple violations of the prior confidentiality restrictions were not the acts of a low-level employee, and they were not an accident:  they were the knowing acts of Plaintiff's chairman.  From Dover's perspective,

---

[9] Details about how disclosure of such information harms and has harmed Dover are set out in ¶¶ 3, 7 (App. 150-51) of the Belohoubek Decl.

-18-

> The making of such improper and inaccurate disclosures at they very highest levels of an organization underscores that Kentucky cannot and should not be trusted with confidential information.

Belohoubek Decl. ¶9 (App. 151).

### C.    The Court Should Enforce Plaintiff's Obligations Under Rules 45, 11 and 26(g)

Rule 45(c) provides:

> (1)    A party … shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  <u>The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party</u> or attorney <u>in breach of this duty an appropriate sanction, which may include,</u> but is not limited to, <u>lost earnings and a reasonable attorney's fee.</u>

Id. (emphasis added)  Rules 11 and 26(g) impose similar obligations.  It is evident that Plaintiff has repeatedly and willfully failed to comply with these obligations, and in fact has taken affirmative steps to impose undue burdens on Dover.

In connection with Plaintiff's Motion to Compel, the totality of Plaintiff's conduct must be borne in mind.  This includes the burden and expense imposed on Dover by Plaintiff's earlier (and invalid) efforts to subpoena Dover.  It was for this reason that Dover served Plaintiff with a notice or warning motion seeking withdrawal under Rule 11 of Plaintiff's overbroad subpoena.  Motion to Compel, Ex. 2.  Prior to that time, Plaintiff had already imposed significant burdens and expense upon Dover by its issuance of an improper subpoena from Ohio, its refusal to withdraw that subpoena even though it was plainly improper, then its completely frivolous and ultimately withdrawn Motion in Kentucky for so-called "nationwide service of subpoenas."

Despite a specific request and an offer to accept service in Delaware, Plaintiff refused to withdraw the Ohio subpoena, and in fact filed the motion in Kentucky.  Dover was therefore required to incur the expense of serving responses to both.  Now Plaintiff has improperly filed a redacted motion to compel, and refused timely to solve the redactions problem by asking the

-19-

Kentucky Court for permission to serve the redacted portions before a response to the motion was required. Plaintiff now seeks, among other things, documents from Dover that Plaintiff has (or can get) from the parties and documents (profit information) that it has told the Kentucky Court it does not need. Plaintiff has also refused to withdraw most of the improper items contained in the first Delaware subpoena (despite Dover's request in the form of service of a formal Rule 11 motion, see Exhibit 2 to the Motion to Compel). Rather, it has required Dover to brief Plaintiff's transfer motion (since withdrawn[10]) and to respond to the Motion to Compel without seeing the redacted portions.

Indeed, Plaintiff's multiple improper filings (many ultimately withdrawn), and the repeated imposition upon Dover of the expenses of filing responses, is the classic case for an award of attorneys fees under Rule 45, not to mention Rules 11 and 26(g). In Night Hawk Ltd. v. Briarpatch Ltd., LP, 2003 WL 23018833 (S.D.N.Y. 2003), the Court awarded a non-party its costs and expenses in opposing an improperly issued subpoena, which the Court found should have been withdrawn before the non-party had to file a response. Citing the mandatory provisions of Rule 45(c)(A) the Night Hawk Court held that:

> Sanctions are properly imposed and attorney's fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash. E.g., American Int'l Life Assurance Co. v. Vasquez, No. 02 Civ. 141, 2003 WL 548736, at *2-3 (S.D.N.Y. Feb. 25, 2003) (imposing sanctions for lost wages and awarding attorney's fees incurred in bringing motion to quash after attorney issuing subpoena refused to comply with non-party's request to voluntarily withdraw subpoena that sought privileged information).

---

[10] Kentucky claimed in its reply on the transfer motion (D.I. 10) that it was concerned that a transfer would take too much time and/or that there might be an appeal. Presumably, Plaintiff will claim that the transfer request was withdrawn for this reason. However, Plaintiff knew from the outset that Dover would oppose transfer. Thus, it should not have put Dover to the expense of filing a response only to thereafter act on its conclusion that a transfer was impractical from Plaintiff's standpoint. If a transfer was impractical, Plaintiff knew that before it imposed upon Dover the undue and unnecessary burden of briefing that issue and should not have done so.

<u>Id</u> at *9.

In the instant case, there is not just one instance of such conduct forcing a non-party to prepare a response, <u>there</u> <u>are</u> <u>five</u>: (1) the abandoned Ohio subpoena, (2) the ultimately withdrawn nationwide service motion, (3) the overbroad subpoenas, (4) the transfer motion in this Court (withdrawn) and (5) the refusal to serve an unredacted version of the Motion to Compel.

At this point, Plaintiff's conduct has gone beyond imposing an undue burden and become an abuse.  That conduct must now be halted by putting Plaintiff out of court.  Accordingly, the Motion to Strike should be granted with prejudice, the Motion to Compel should be denied in its entirety and with prejudice, and Plaintiff should be required to reimburse Dover for the expenses of:

> (1)    responding to the improper Ohio subpoena
>
> (2)    responding to the unfounded "nationwide services of subpoena motion"
>
> (3)    responding to the Delaware subpoenas, including improperly redacted Motion to Compel and filing the Motion to Strike.

**V.      CONCLUSION**

For all the above reasons, (1) the Motion to Strike should be Granted; (2) the Motion to Compel should be denied, and (3) Plaintiff should be Ordered to reimburse Dover for the Costs and Expenses of Responding to Plaintiff's Various Subpoenas and Motions.

Respectfully submitted,

Dated:  December 12, 2006                         s/ RGPlacey
                                                  Richard G. Placey (DE I.D. No. 4206)
                                                  Richard M. Donaldson (DE I.D. No. 4367)
                                                  MONTGOMERY, McCRACKEN,
                                                    WALKER & RHOADS, LLP
                                                  300 Delaware Avenue, Suite 750
                                                  Wilmington, DE 19801
                                                  Tel:  (302) 504-7880
                                                  Fax:  (302) 504-7820

                                                  Attorneys for Non-Party
                                                  Dover Motorsports, Inc.

Of Counsel:

Klaus M. Belohoubek, Esquire
Senior Vice President and General Counsel
Dover Motorsports, Inc.
Concord Plaza
3505 Silverside Road
Plaza Centre Bldg., Suite 203
Wilmington, DE  19810

2137830v1

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KENTUCKY SPEEDWAY, LLC | : | CASE NO: |
| | : | |
| Plaintiff, | : | 1:06-mc-00203-KAJ |
| | : | |
| v. | : | |
| | : | |
| NATIONAL ASSOCIATION | : | |
| FOR STOCK CAR AUTO | : | |
| RACING, INC., ET AL., | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, this            day of                       , 2006, upon consideration of Plaintiff's Motion to Compel Against Non-Party Dover Motorsports, Inc. (D.I. 1) ("Motion to Compel") and the Cross-Motion to Strike All Redacted Portions of Plaintiff's Motion to Compel Against Non-Party Dover Motorsports, Inc. (D.I. 12), and the Court having considered the briefs and arguments of the parties,

IT IS HEREBY ORDERED that:

1.      The cross-motion to strike is granted, and the redacted portions of the Motion to Compel are stricken (with prejudice to any reassertion of the arguments therein) and will not be considered by the Court;

2.      The Motion to Compel is denied;

3.      Dover is awarded its attorneys' fees and costs in responding to the Ohio subpoena, the Kentucky motion for nationwide service of subpoenas and the Motion to Compel (and Delaware subpoena of May 30, 2006). The parties shall attempt to agree on the monetary amounts corresponding to this award within 30 days of the date of this

Order; in the event that the parties cannot agree on an amount, they shall either submit an

agreement setting out a form of alternative dispute resolution (for example, mediation or

arbitration) within 45 days or the Court will appoint a special master to set the amount.

BY THE COURT:

_____

J.