## MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP
ATTORNEYS AT LAW

123 SOUTH BROAD STREET
AVENUE OF THE ARTS
PHILADELPHIA, PA 19109
215-772-1500
FAX 215-772-7620

300 DELAWARE AVENUE
SUITE 750
WILMINGTON, DE 19801
302-504-7800
FAX 302-504-7820

LIBERTYVIEW
457 HADDONFIELD ROAD, SUITE 600
CHERRY HILL, NJ 08002
856-488-7700
FAX 856-488-7720

RICHARD G. PLACEY
ADMITTED IN DELAWARE, ILLINOIS,
NEW JERSEY & PENNSYLVANIA
DIRECT DIAL: (302) 504-7880

March 6, 2007

Magistrate Judge Mary Pat Thynge
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building, Room 6100
Wilmington, DE 19801

Re:   **Kentucky Speedway, LLC v. NASCAR, et al.**

Dear Judge Thynge:

This letter is submitted in support of Dover Motorsports, Inc.'s ("Dover") request for reimbursement of its attorneys' fees for responding to certain items filed or served by Kentucky Speedway, Inc. ("Kentucky") that imposed **undue burden and expense** upon Dover.[1] The following items remain at issue: (1) the First Delaware Subpoena (through July 7, 2006), (2) the Second Delaware Subpoena, (3) Briefing the Motion to Transfer, and (4) the Motion to Strike.

### A.    Legal Standard

While there has been much discussion of Rule 11 and "sanctions" in the conferences with the Court, in fact Dover need only meet a **lower standard** than that of Rules 11, 26 or 37. In that regard, Rule 45(c) provides:

> (1)   A party ... shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. **The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party ... in breach of this duty** an appropriate sanction, which may include, but is not limited to, lost earnings and **a reasonable attorney's fee**.

Id. (emphasis added)[2]  Under this rule, the Courts "shall" require reimbursement of a non-party's costs and expenses when an **undue burden or expense** is imposed. See Night Hawk Ltd. v. Briarpatch Ltd., LP, 2003 WL 23018833 (S.D.N.Y. 2003) (ordering reimbursement of fees); American Int'l Life Assurance Co. v. Vasquez, No. 02 Civ. 141, 2003 WL 548736, at *2-3 (S.D.N.Y. Feb. 25, 2003) (imposing lost wages and awarding attorney's fees incurred in connection with unduly burdensome

---

[1] The items and costs associated with each are spelled out in the Declaration of Richard G. Placey (D.I. 29). For easy reference, the significant documents referred to herein are collected in an appendix being filed herewith (where necessary to place the document in context, a cite to the Docket Index Number or Exhibit number will also be given). That Declaration is at App. 1-5 and the definitions used in the Declaration will be used in this letter.

[2] Rules 11, 26, and 37 also allow for orders requiring payment of fees but require some showing of bad faith or the like. Rule 45 requires no such showing, rather requiring only that an **undue burden or expense** was imposed. Since Dover is entitled to an award under this lower standard, Dover's argument herein is addressed to the issue of undue burden (failure to meet this undue burden standard would likely be fatal to a Rule 11 or similar claim).

subpoena). As will be demonstrated below, each of the remaining items at issue imposed undue burden and expense on Dover.

    **B.**    <u>**Argument**</u>

In evaluating this issue, the totality of Kentucky's conduct must be borne in mind. This includes the burden and expense imposed on Dover by the earlier (and invalid) efforts to subpoena Dover **before Kentucky even came to Delaware.** Prior to serving its Delaware subpoenas, Plaintiff had already imposed significant expense upon Dover by the improper Ohio subpoena and the completely unfounded Kentucky nationwide subpoenas motion. Kentucky has now agreed that Dover is entitled to be reimbursed for the fees involved in responding to these items (in the amount of $5,720.).

However, it cannot be overlooked that, despite repeated requests during discussions of the various subpoenas throughout the summer, fall and winter, it was only on February 27, 2007 (the date of a conference with the Court to address Dover's fee request) that Kentucky first offered to pay even for these items. Moreover, by the time it served the 22 items list (the subject of the motion to compel), Kentucky had served and abandoned or withdrawn the Ohio subpoena, the Kentucky Motion, the First Delaware Subpoena and the Second Delaware Subpoena. It then later withdrew the Motion to Transfer as well. Thus, there were five (5) withdrawn or abandoned subpoenas or motions in connection with this matter to which Dover had to respond.

The remaining items for which Dover is entitled to reimbursement under the undue burden standard are:

    1.    <u>First Delaware Subpoena (through July 7, 2006) (fees: $5,265.00)</u>. This subpoena (App. 6-18) sought 34 categories of documents (not including sub-parts) over almost 15 years, including such multiple sub-part items (emphasis added) as:

26. Documents sufficient to show **the following for each racetrack owned by you** ... :

            \*        \*        \*

    b.    The **seating capacity** for the racetrack broken down by general admission/grandstand, luxury suites, club seats;
    c.    **Parking capacity** ...

            \*        \*        \*

    f.    The ticket sales for the Nextel Cup event;
    g.    The advertising revenue for the Nextel Cup event;
    h.    **The facilities amenities** for the Nextel Cup event, including but not limited to concession sales, program and merchandise sales, fees for hospitality tents, and fees for souvenir trailers;
    i.    The racetrack safety records;
    j.    **Complaints or suggestions** about the racetrack by drivers, owners, crew and **spectators**;
    k.    **Comments about the track** by NASCAR;
    l.    **Comments about the track** by any other racetrack;

            \*        \*        \*

    x.    The decision whether or not to allow the racetrack to host ....

This subpoena also included, at item 8, the completely improper request for all documents concerning "anticompetitive behavior" that Kentucky refused to withdraw and which was stricken by the Court from the 22 items list.

Kentucky can be expected to claim that its Motion to Compel cited this subpoena, and was granted in part, thereby validating this First Delaware Subpoena. **But that is not so**: The First Delaware Subpoena was withdrawn on July 7, 2006 (see App. 22-30). The Motion to Compel actually sought to compel production of a much narrower 22 item list that was not even served until September 6, 2006 (App. 19-21; Exhibit 3 to the Motion to Compel). See Motion to Compel ¶¶11 and 14. At a minimum, this narrower 22 item list should have been served in the first place. Dover seeks its fees through the date this subpoena was withdrawn on July 7, 2006; it does not seek its fees for this item thereafter or for dealing with the 22 item list (App. 19-21) and upon which Kentucky actually based the Motion to Compel.

2. <u>Second Delaware Subpoena (fees: $5,005.00)</u> – This subpoena (App. 22-30) was served on July 7, 2006 (upon withdrawal of the First Delaware Subpoena, see App. 22), and was itself withdrawn (implicitly) by the September 6, 2006 email serving the 22 items list (App. 19-21). Dover tried hard to reach an agreement with Kentucky on the basis of this narrower subpoena, see App. 31-33/Motion to Compel Exhibit 6, only to have Kentucky withdraw this subpoena as well and start over. Thus, Dover's efforts to respond to and reach agreement on this subpoena were also wasted, and represent an undue burden on Dover.

3. <u>Briefing the Motion to Transfer (fees: $8,761.00)</u>. While it has been claimed that Dover (or the Court) had a particular interest in this motion, all of **that is irrelevant because Kentucky withdrew this motion with prejudice (see D.I. 11) after forcing Dover to brief it**.[3] Put simply, it was an undue burden for Kentucky to require this motion to be briefed by Dover if – as it turned out – transfer was impractical in Kentucky's view.

Kentucky claimed that it was withdrawing the transfer motion because it was concerned that a transfer would take too much time and/or that there might be an appeal (D.I. 10). However, Dover said in the very first conference that it would oppose transfer. If Kentucky did not intend to pursue this motion, it should have told everyone so right then and there and taken the issue off the table. The expense of briefing this was unnecessary, and **all of the resources expended by Dover on the transfer were wasted**. It was an undue and unnecessary burden and expense to wait until after Dover briefed the transfer issue to withdraw the motion.

4. <u>Motion to Strike (fees: $8,933.00)</u> – Dover was required to file this motion because it had no other way (besides submitting to jurisdiction in Kentucky) to respond to the redacted arguments. When the issue of the confidentially order first came up, on October 11, 2006 Dover's Delaware counsel signed the agreement to be bound by the Kentucky Confidentiality Order to resolve this problem (App. 34-35). Nevertheless, Kentucky got into a dispute with the defendants in the main case over this issue, and ultimately claimed it could not serve an "unredacted" motion on Dover's counsel **even though he had signed the agreement to be bound**. Dover did everything that it reasonably could to resolve this issue, only to be told that it would have to appear in Kentucky to get the redacted portions of a motion filed against it in Delaware. Kentucky's position was a trap, as the case law on transfer of motions of this type allows transfer where the non-party has voluntarily sought relief in the main case. Until this Court indicated it would not consider the redacted portions, Dover had no way to know whether those portions would be persuasive to the Court – and had no way to respond, necessitating the filing of the Motion to Strike.

---

[3] Dover believes that the transfer motion (D.I. 1 at ¶¶18-19 on p. 8) was also legally ill founded. It was based on district court opinions "transferring" motions for protective order where the non-party had also **appeared in the main case and** filed such a motion there. Even worse, Kentucky did not even advise Judge Jordan of the Court of Appeals' decision in <u>In re Sealed Case</u>, 141 F.3d 337 (D.C. Cir. 1998) holding that transfers of motions to compel are barred by Rule 45. However, the real issue under the undue burden analysis is whether Kentucky imposed an undue burden by waiting to withdraw this motion until **after** Dover had to expend resources briefing it.

      Finally, Kentucky has claimed orally that it should be entitled to reimbursement of some fees or expenses from Dover, but has to this time neither served any written document specifying the basis for that claim nor filed any affidavit listing such costs or expenses. Based on oral conversations, counsel believes that Kentucky will claim that Dover should have agreed to Kentucky's February 22, 2007 fee offer (the very first time Kentucky offered to reimburse **any** attorneys' fees was on that date) or should have agreed to produce in response to the 22 items list without a motion. Both of these claims are wrong[4].

      For the reasons set forth above, particularly given that Kentucky served and then abandoned or withdrew **five** subpoenas or motions after Dover was required to respond, Dover is entitled under the undue burden standard to reimbursement for more than just the Ohio Subpoena and Kentucky Motion. Indeed, Kentucky's uncompromising position on the fees point has been a major stumbling block to any agreement in this matter.

      Moreover, any claim that Dover should have agreed simply to produce everything on the 22 items list (and avoid the Motion to Compel) is factually and legally baseless. When Kentucky served Dover with the 22 item list on September 6, Dover had just made an offer to resolve everything based on the Second Delaware Subpoena (see App. 31-33) – but Kentucky decided to withdraw that subpoena and **start over yet again** with broader requests (App. 19-21). Kentucky's claim that it was entitled to the 22 items based on the "confidential" documents was impenetrable -- even after Dover's counsel signed onto the Order in Kentucky, Kentucky would not discuss the information that it claimed justified its request, making meaningful negotiations difficult or impossible. In addition, as Dover pointed out in its earlier brief (D.I 13 at p.17) and appendix, Kentucky had admittedly breached a confidentiality agreement with Dover in the past; for that reason highly specific to Kentucky, Dover took issue with producing certain confidential information to Kentucky. While the Court did not accept this position, Dover had good reason to advance it. Finally on hearing the motion, the Court limited most of the 22 items and rejected some outright (like item 13: documents related to anticompetitive behavior). Thus, no claim can be made that Dover should have simply produced in response to this list, or that fees should be awarded because Dover did not do so.

      For these reasons, Dover should be awarded fees for the undue burden of dealing with the remaining four items (a total of $27,964., in addition to the agreed amount of $5,720.), and Kentucky is entitled to no award.

                                                                         Respectfully yours,

                                                                         Richard G. Placey (DE 4206)

cc:    John M. Seaman (w/encl) – via e-mail
        Justin A. Nelson, Esquire (w/encls.) – via mail
        Kimberly S. Amrine, Esquire (w/encls.) – via mail
        Robert B. Craig, Esquire (w/encls.) - via mail
        Guy Wade, Esquire (w/encls.) - via mail
        Helen Maher, Esquire (w/encls.) - via mail

---

[4] Note that, unlike Kentucky, Dover does not seek fees for litigating that Motion to Compel, recognizing that such motion was not withdrawn and that each side had some of its positions upheld by the Court. In that regard, Dover's fee request is based on the undue burden and expense imposed by Kentucky's various ill-founded, abandoned and withdrawn filings.