BOUCHARD MARGULES & FRIEDLANDER

A PROFESSIONAL CORPORATION

SUITE 1400

222 DELAWARE AVENUE

WILMINGTON, DELAWARE 19801

(302) 573-3500

FAX (302) 573-3501

ANDRE G. BOUCHARD
JOEL FRIEDLANDER
DAVID J. MARGULES

JOHN M. SEAMAN
DOMINICK T. GATTUSO
JAMES G. MCMILLAN, III
SEAN M. BRENNECKE

March 6, 2007

**By CM/ECF and Hand Delivery**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court for the District of Delaware
844 North King Street
Wilmington, Delaware 19801

Re: _Kentucky Speedway, LLC v. NASCAR, et al._, C.A. No. 06-mc-203 (***)

Dear Judge Thynge:

Before the Court is a rare breed of a motion for attorney's fees. Dover Motorsports, Inc. ("Dover") asks this Court to sanction Kentucky Speedway, LLC ("Kentucky") on unprecedented grounds—first, counterintuitively, that Kentucky be sanctioned for having prevailed on two different motions; second, that it pay sanctions because Dover was compelled to prepare and file briefing that was ordered by this Court.

I.      **Applicable Facts**

As this Court is aware, Kentucky served a subpoena on Dover issued out of this Court on May 30, 2006, asking for approximately 34 categories of documents. After objecting to the subpoena, counsel for Dover and counsel for Kentucky negotiated in good faith to try to reach agreement on the subpoena. As part of that agreement, Dover requested that Kentucky reissue its subpoena without prejudice on 9 narrower categories. The agreement captured in the second subpoena, however, fell apart when Dover would not agree that Kentucky could request more documents from Dover after the defendants in the underlying case completed their production. After the defendants substantially completed their production, Kentucky went back to Dover asking approximately 22 categories of documents based on both the first and second subpoenas. When Dover still objected, Kentucky filed a Motion to Compel. (D.I. 1)  That Motion was to compel production on the first and second subpoenas. No other subpoena is at issue.

Immediately after filing the Motion to Compel, Judge Jordan convened a teleconference on October 26, 2006, asking the parties why the Eastern District of Kentucky should not hear this matter. Kentucky responded that it had no objection. Dover, however, objected, and the Court ordered briefing on the matter. At that same hearing, Dover objected to Kentucky's Motion to Seal part of the Motion containing information designated highly confidential material by defendants in the underlying case. The Court overruled Dover's objections to seal.

The Honorable Mary Pat Thynge
March 6, 2007
Page 2

Dover now asks for over $25,000 in attorney's fees for (1) the two subpoenas that were the basis of Kentucky's Motion to Compel; (2) briefing on the Motion to Transfer that this Court ordered; and (3) briefing on the Motion to Strike after this Court ordered certain material sealed. All three requests have no basis in fact or law, and Kentucky requests its reasonable attorney's fees for having to respond to Dover's request for attorney's fees.

## II.     Applicable Law

This Court should not award attorney's fees to Dover under Rule 11, 26, 37, 45, or any other Rule or statute. Kentucky has been unable to find a single case where a court awarded attorney's fees to a party that <u>lost</u> a discovery motion.

**Rule 11**

With Dover's objections to the subpoenas, it served a Rule 11 motion on Kentucky. It argued that the subpoenas were overbroad and vague, among other reasons. This Court however, <u>rejected</u> Dover's arguments. To prevail under Rule 11, this Court not only must find that the motion was wrong. It must find that the motion was "patently unmeritorious or frivolous." Likewise, for both the Motion to Transfer and the Motion to Strike, <u>this Court ruled initially for Kentucky</u>. Indeed, with respect to the Motion to Transfer, the Court ordered briefing on the issue. No sanctions are warranted under Rule 11 – "We have repeatedly said that Rule 11 sanctions are reserved for circumstances where a claim or motion is patently unmeritorious or frivolous." *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 175 (3d Cir. 1993) (internal quotations omitted).

**Rule 45**

Under Rule 45(c)(1), a Court may order attorney's fees only as a "sanction." Furthermore, a sanction under Rule 45 requires a finding of bad faith. *See Spencer v. Steinman*, 1999 U.S. Dist. LEXIS 23387, *2 (E.D. Pa. Mar. 1, 1999) ("[S]ince Rosen did not knowingly or intentionally cause the violation to occur, the Court cannot conclude that Rosen acted in bad faith and the portion of the Order imposing monetary sanctions on Plaintiffs' counsel must be vacated."); *see also Hampton Forge Ltd. v. Descamps*, 2006 WL 469953. *10 (D. N.J. Feb. 23, 2006) (refusing to award sanctions under Rule 45 because plaintiff had a "legitimate basis" for issuing subpoena); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (attorney's fees award appropriate only where authorized by statute, party disobeys a direct court order, or has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons"). Rule 45 allows attorney's fees only for "misuse of a subpoena," Charles Alan Wright & Arthur Miller, 9A *Federal Practice and Procedure* 2d § 2463 (2006). Not only has Dover not alleged any sufficient bases for a finding that Kentucky misused a subpoena, this Court—in adjudicating Kentucky's Motion to Compel on the same subject matter—<u>granted</u> the Motion, thereby validating the propriety of Kentucky's use of the subpoena(s) at issue. Indeed, Dover's argument is that this Court compelled it to produce based upon a vexatious subpoena. Dover does not even argue that Kentucky mis-used a subpoena. Rather, Dover complains of Kentucky's motion with respect to an undisputedly

The Honorable Mary Pat Thynge
March 6, 2007
Page 3

proper subpoena, and by seeking sanctions based thereupon, Dover has confused the difference between a subpoena and a motion related to a subpoena.

## Rules 26 and 37

These rules are not at issue here. To the extent that the Rules are applicable, or that Dover invokes them, this Court should award attorney's fees to Kentucky. These Rules authorize attorney's fees to the <u>prevailing</u> party on a discovery motion. *See* Fed. R. Civ. P. 37(a)(4); 26(c). If Dover invokes these Rules, Kentucky requests the Court order Dover to pay for Kentucky's costs and fees in preparing the underlying Motion to Compel. Kentucky will submit an affidavit detailing these costs and fees should the Court grant fees on this basis.

## Sanction Against Dover

Kentucky and Dover, through counsel, conferred by telephone with respect to Dover's request for attorney's fees on the bases reviewed herein. During that conference, Kentucky informed Dover that its request for sanctions was meritless based on the frivolity of motions—when those motions were <u>granted</u>—and the appropriateness of briefing—when a federal court <u>ordered</u> that briefing. Kentucky also explained the appropriateness of sanctions, in return, if forced to address Dover's meritless sanctions request. Immediately following that meet-and-confer, the parties attended a teleconference with the Court. Dover persisted in its meritless pursuit of attorney's fees. Kentucky has incurred $4,325.00 in responding to this issue. *See* Declaration of John Seaman, filed herewith. Indeed, its request for fees based on the two Delaware subpoenas are directly contrary to this Court's order that it should not seek reimbursement for issues upon which Kentucky prevailed. Under 28 U.S.C. § 1927 and this Court's inherent power, Kentucky asks this Court to award it $4,325.00 in sanctions for responding to Dover's frivolous requests for sanctions and attorney's fees. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions*, 278 F.3d 175, 187-89 (3d Cir. 2002).

Dover is out of line in asking for sanctions against Kentucky for issuing the two Delaware subpoenas and for responding to the motions as ordered and granted by the Court. This Court should not award Dover its attorney's fees, but instead should order Dover to pay Kentucky's attorney's fees for having to respond to its application.

Respectfully submitted,

John M. Seaman (I.D. No. 3868)

cc:     Clerk (by CM/ECF)
        Richard G. Placey, Esquire (by CM/ECF and email)
        Helen M. Maher, Esquire (by email and U.S. Mail)
        Guy I. Wade, III, Esquire (by email and U.S. Mail)
        Robert B. Craig, Esquire (by email and U.S. Mail)

# EXHIBIT A

1 of 7 DOCUMENTS

**CRAIG A. SPENCER, et al., Plaintiffs, v. MILTON STEINMAN, Defendant.**

**CIVIL ACTION NO. 96-1792**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1999 U.S. Dist. LEXIS 23387*

**February 25, 1999, Decided**
**March 1, 1999, Entered**

**PRIOR HISTORY:** *Spencer v. Steinman, 179 F.R.D. 484, 1998 U.S. Dist. LEXIS 8276 (E.D. Pa., 1998)*

**DISPOSITION:** [*1] Petitioner's motion for partial reconsideration denied in part and granted in part. Monetary sanctions vacated and non-monetary sanctions reaffirmed.

**COUNSEL:** For ARDEN PHOENIX GROUP 1700, L.P., A PENNSYLVANIA LIMITED PARTNERSHIP, Plaintiff: IAN M. COMISKY, BLANK ROME, LLP, PHILADELPHIA, PA; JEFFREY M. GOLDSTEIN, GOLDSTEIN & LOOTS, PC, WASHINGTON, DC; LARRY R. WOOD, JR., PEPPER HAMILTON LLP, PHILADELPHIA, PA; ROGER F. COX, BLANK ROME COMISKY & McCAULEY LLP, PHILADELPHIA, PA; SUZANNE ILENE SCHILLER, SPECTOR GADON & ROSEN PC, PHILADELPHIA, PA.

For MILTON STEINMAN, A FLORIDA RESIDENT DOING BUSINESS IN PENNSYLVANIA, Defendant: GERARD P. EGAN, ELLIOTT REIHNER, BLUE BELL, PA; JOHN M. ELLIOTT, ELLIOTT REIHNER SIEDZIKOWSKI & EGAN, BLUE BELL, PA; MARK A. KEARNEY, ELLIOTT REIHNER SIEDZIKOWSKI, ET AL, BLUE BELL, PA.

For PAUL R. ROSEN, Movant: PETER J. BOYER, MCCARTER & ENGLISH, LLP, PHILADELPHIA, PA.

**JUDGES:** EDUARDO C. ROBRENO, J.

**OPINION BY:** EDUARDO C. ROBRENO

**OPINION:**

ORDER

**AND NOW,** this 25th day of February, 1999, following a hearing, and upon consideration of Petitioner's Motion for Partial Reconsideration (docket no. 107) and Defendant opposition thereto (docket no. 109), it is hereby **ORDERED** that Petitioner's [*2] motion is **DENIED IN PART** and **GRANTED IN PART.** n1 It is further **ORDERED** that the monetary sanctions are **VACATED** and the non-monetary sanctions are **REAFFIRMED.**

n1 On June 2, 1996, the Court found Mr. Rosen's ("Rosen") conduct violated *Rule 45(b) of the Federal Rules of Civil Procedure*, by failing to provide notice of the issuance of three subpoenas duces tecum to non-parties in the litigation. *Spencer v. Steinman, 179 F.R.D. 484, 487 (E.D. Pa. 1998).* Pursuant to this finding, the Court imposed monetary and non-monetary sanctions which: 1) required Rosen to pay the opposing party's counsel fees incurred in filing the motion to enforce the violation of the rule; 2) file an affidavit that all documents produced pursuant to the subpoenas had been furnished to opposing counsel; and 3) admonished Rosen against issuing future subpoenas duces tecum to non-parties without prior notice to opposing counsel. *Id. at 489.* Although not expressly articulated in the June 2, 1998 Memorandum and Order ("Memorandum and Order'), this Court imposed such sanctions pursuant to its inherent powers.

Rosen now moves for reconsideration of the imposition of sanctions, arguing that before sanctions can be imposed pursuant to either *28 U.S.C. § 1927* and/or the inherent powers of the court, a finding of bad faith must be made. Defendant filed opposition to Rosen's motion and the Court

held a hearing where Rosen presented both evidence and argument in support of his motion.

In this case, the record shows that: 1) Rosen knew that notice was required when issuing subpoenas duces tecum to non-parties pursuant to *Federal Rule of Civil Procedure 45*, when the deposition of the non-party is not to be taken as part of the document production; 2) Rosen was aware that issuing those subpoenas without notice would be in direct violation of *Federal Rule of Civil Procedure 45* that could potentially cause harm to opposing counsel and the public in general; 3) the subpoenas were designed to obtain sensitive information of extraordinary nature, including the telephone records of a judicial officer and opposing counsel; 4) the paralegal to whom the matter was assigned, had never previously been involved in issuing subpoenas in a federal district court civil action; and 5) the paralegal issued the subpoena upon the non-parties without notice to opposing counsel.

The United States Supreme Court has held that a court may impose a monetary sanction, pursuant to its inherent powers, only upon a finding of "bad faith". *Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991)*. In Chambers, the Supreme Court stated that "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly or for oppressive reasons.'" Id.; see also *Martin v. Brown, 63 F.3d 1252, 1265 (3d Cir. 1995)*; *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1227 (3d Cir. 1995)*.

Upon reconsideration, the Court finds the record does not support a finding of bad faith on the part of Rosen because defendant has not shown that Rosen knowingly or intentionally directed the issuance of the subpoenas upon nonparties without notice to opposing counsel. Thus, since Rosen did not knowingly or intentionally cause the violation to occur, the Court cannot conclude that Rosen acted in bad faith and the portion of the Order imposing monetary sanctions on Plaintiffs' counsel must be vacated.

The Court, however, will reaffirm the imposition of non-monetary sanctions, i.e., admonishing counsel against issuing future subpoenas duces tecum to non-parties without prior notice to all parties and requiring counsel to submit an affidavit attesting that copies of all documents produced pursuant to the subpoenas had been delivered to opposing counsel, on the basis that

Rosen's conduct was at least negligent. See *Restatement (Second) of Torts § 282* (1964) ("Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm"). To put it another way, Rosen had a duty, directly or as a supervisor, to ensure that the notice requirement was complied with. By his conduct, Rosen breached this duty. As this Court articulated in the Memorandum and Order, the risks attendant to the misuse of the subpoena power are great. "Under this delegation of public power, an attorney is licensed to access, through a non-party with no interest to object, the most personal and sensitive information about a party." *Spencer, 179 F.R.D. at 489*. "Moreover, the injury resulting from attorney misuse of the subpoena power is not limited to the harm it inflicts upon the parties. Rather, misuse of the subpoena power also compromises the integrity of the court's processes." Id. (citation omitted). The Court, pursuant to its inherent powers, has the authority to impose just, non-monetary sanctions to ensure compliance with the Federal Rules of Civil Procedure, beyond excluding from evidence the materials improperly obtained as a result of the subpoena, and to protect the integrity of the judicial system.

The Supreme Court, in Chambers, discussed the genesis and scope of the courts' inherent powers. "Inherent powers derive from the very nature of courts of justice." *In re Tutu, 120 F.3d at 383* (citing *Chambers, 501 U.S. at 43*). "For this reason, Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers, 501 U.S. at 43* (citations omitted). The Third Circuit has further concluded that "necessarily incident to the act of creating courts is the act of imbuing these institutions with certain indispensable powers to 'manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Id. (quoting *Chambers, 501 U.S. at 42*) (citations omitted).

The courts' inherent powers have not been displaced by the sanctioning scheme of *28 U.S.C. § 1927* or any other Federal Rule of Civil Procedure. See *Chambers, 501 U.S. at 46*. The Supreme Court has recognized that these other sanctioning mechanisms, "taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions." Id. While the other mechanisms reach only certain individuals

or conduct, "the inherent power extends to a full range of litigation abuses." *Id.* In fact, "the inherent power must continue to exist to fill in the interstices" where the statute or rule cannot provide an adequate remedy. *Id.* The Court concludes that this is such a situation where the court's inherent powers must be used to "fill in the interstices" not recognized under other textually specific rules or provisions. For example, the Court may not impose sanctions pursuant to *Rule 11* in this case, since the issuing of the subpoenas, although procedurally flawed, was for the proper purpose of obtaining evidence discoverable under *Rule 26(b)*. In addition, *Rules 26* and *37* do not seem to provide a remedy since the defendant's motion was to quash, not to compel and defendant never sought a protective order. Furthermore, a court may impose sanctions pursuant to *28 U.S.C. § 1927* only when an attorney "multiplies the proceedings," which did not occur in this matter. Therefore, the sole source available to the Court to sanction the attorney in the situation presented by this case, for violating *Federal Rule of Civil Procedure 45*, is its inherent powers.

While the exact perimeter of the court's inherent powers remains unsettled, "'courts under their inherent powers have developed a wide range of tools to promote efficiency in their courtroom and to achieve justice in their results.'" *In re Tutu Wells Contamination Litigation, 120 F.3d 368, 383, 37 V.I. 398 (3d Cir. 1997)* (quoting *Eash v. Riggins Trucking Inc., 757 F.2d 557, 561 (3d Cir. 1985)* (en banc) (citations omitted)). The United States Supreme Court has recognized that courts can utilize these inherent powers to: control admission to its bar, discipline attorneys, punish for contempt, vacate its own judgments upon a finding of fraud, bar a criminal defendant from a courtroom for disruptive behavior, dismiss a suit on forum non conveniens grounds or for failure to prosecute and assess attorney's fees. *In re Tutu, 120 F.3d at 383* (citing *Chambers, 501 U.S. at 43-46*). In addition, the Third Circuit has concluded that courts possess other inherent powers such as the power to fine, to disqualify counsel, to preclude claims or defenses, and to limit a litigant's future access to the courts. Id. While it is clear that the imposition of monetary

sanctions or attorney's fees, pursuant to the court's inherent powers requires a finding of bad faith, see *Chambers, 501 U.S. at 45-46*; *Martin, 63 F.3d at 1265*, to extend that "bad faith" requirement to the imposition of non-monetary sanctions in all cases, would severely undermine the court's ability to perform its functions. The Third Circuit has noted just that, by commenting that "athough we stated in *Landon v. Hunt, 938 F.2d 450 (3d Cir. 1991)*, that a 'prerequisite for the district court's inherent powers to sanction is a finding of bad faith conduct' . . . that statement should not be read to require a finding of bad faith in every case, regardless of the sanctions contemplated." *Republic of the Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 74 n.11 (3d Cir. 1995)*; see also *Chambers, 501 U.S. at 59* (Scalia, J., dissenting) (Although attorney's fees as a sanction can only be imposed for litigation conduct characterized as bad faith, this "in no way means that all sanctions imposed under the courts' inherent authority require a finding of bad faith.").

It is clear that this Court has the inherent authority to insure that a party is not deprived of the protection of receiving notice of the issuance of a subpoena duces tecum to a non-party, afforded by the Federal Rules of Civil Procedure, and to protect the integrity of the judicial system and safeguard it against potential abuse. Thus, requiring an attorney to comply with the Federal Rules of Civil Procedure by insuring that he had disgorged the fruits of the violation, and admonishing him that he should not violate the specific rule in the future, clearly fall within this Court's inherent powers. Thus, this Court concludes that it had the inherent authority to impose non-monetary sanctions, absent a finding of bad faith, upon a finding that Rosen negligently caused a subpoena to be issued on a non-party without notice to opposing counsel, and will re-affirm that portion of the Order.

[*3]

**AND IT IS SO ORDERED.**

EDUARDO C. ROBRENO, J.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 469953 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

**H**

Briefs and Other Related Documents
Hampton Forge, Ltd. v. DescampsD.N.J.,2006.Only
the Westlaw citation is currently available.NOT FOR
PUBLICATION
United States District Court,D. New Jersey.
HAMPTON FORGE, LTD., Plaintiff,
v.
Agnes DESCAMPS and Christian Perrod,
Defendants.
**No. Civ. 03-4500(GEB).**

Feb. 23, 2006.

Stephen F. Roth, Lerner, David, Littenberg,
Krumholz & Mentlik, LLP, Westfield, NJ, for
Plaintiff.
Agnes Descamps, pro se.
Christian Perrod, pro se.

OPINION
BROWN, District Judge
**\*1** This matter comes before the Court upon: (1)
plaintiff Hampton Forge, Ltd.'s ("Plaintiff" or
"Hampton Forge") motion for entry of default
judgment; (2) Ms. Barbara Hoffman, Esq.'s motion
for sanctions against Plaintiff and its counsel; and (3)
Plaintiff's cross-motion for sanctions against Ms.
Hoffman. In addition, three motions filed prior to the
original July 19, 2005 trial date, although moot,
remain on the docket. They include: (1) Plaintiff's
motion to bar Defendants from arguing that foreign
law applies in this case; (2) Plaintiff's motion for
summary judgment of Defendants' counterclaim; and
(3) Defendants' cross-motion for summary judgment
of Plaintiff's claims. The Court has jurisdiction over
this matter pursuant to 28 U.S.C. § 1332. The Court,
having considered the parties' submissions and
decided the matter without oral argument pursuant to
Federal Rules of Civil Procedure Rule 78, and for the
reasons set forth below, will: (1) grant Plaintiff's
motion for entry of default judgment; (2) deny Ms.
Hoffman's motion for sanctions; and (3) deny
Plaintiff's cross-motion for sanctions. The Court will
also dismiss the remaining motions as moot.

## I. BACKGROUND

**\*1** Plaintiff is a company in the business of

designing, manufacturing and distributing flatware,
cutlery and dinnerware. (Amar Aff. ¶ 5, June 24,
2004.) It is located in Eatontown, New Jersey. (*Id.* ¶
3.) Defendant Agnes Descamps is a sculptor and
designer. (Descamps Aff. ¶ 3, June 14, 2004.)
Defendant Christian Perrod is Ms. Descamps'
husband and alleged business partner. (Perrod Aff. ¶
4, July 2, 2004; Amar Aff. ¶ 25, June 24, 2004.)
Both Ms. Descamps and Mr. Perrod (collectively
"Defendants") are citizens and residents of France.
(Descamps Aff. ¶ 2, June 14, 2004; Perrod Aff. ¶ 3,
July 2, 2004.) Ms. Hoffman is an attorney licensed to
practice in New York, Washington and the District of
Columbia. (Hoffman Aff. ¶ 1.) Throughout the
course of this litigation, Ms. Hoffman has served as a
French and English interpreter to *pro se* Defendants.

**\*1** On September 22, 2003, Plaintiff filed a complaint
against Defendants for breach of contract and related
claims. (Compl.¶ ¶ 16-42.) According to the
Complaint, "[i]n or about February 2000, Hampton
Forge engaged Defendants to assist in designing
flatware for sale" and "provided Defendants with
travel, training, advice, expenses and education so
that [Ms. Descamps] could develop such designs."
(Compl.¶ 13.) The Complaint further alleges that
"[i]n exchange for Agnes Descamps' work, Hampton
Forge agreed to compensate Defendants" and that
"[s]uch compensation has been paid to Defendants."
(*Id.* ¶ 14.) According to the Complaint, "Defendants
have claimed that Hampton Forge's works belong to
them and not Hampton Forge" in alleged breach of
the parties' contract. (*Id.* ¶ 15.) Plaintiff seeks both
injunctive and monetary relief for Defendants'
alleged breach.

**\*1** On March 22, 2004, Defendants moved to dismiss
the Complaint for lack of personal jurisdiction. On
April 6, 2004, Magistrate Judge Hughes conducted a
telephone conference with the parties to set the
briefing schedule for Defendants' motion and to
discuss discovery by the parties. Appearing during
the telephone conference were Mr. Stephen F. Roth,
Esq., as counsel for Plaintiff, and Defendant Ms.
Descamps, who appeared *pro se.* (Order, April 8,
2004.) Ms. Hoffman also appeared during the
conference as an interpreter, with the consent of
Plaintiff. (*Id.*)

**\*2** Pursuant to that conference, Judge Hughes set a
schedule for discovery by the parties and provided

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 469953 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

for Ms. Hoffman's continued involvement as an interpreter for Defendants. Specifically, the parties were ordered to "provide informal written document requests in lieu of formal discovery to Ms. Hoffman, who shall translate and provide the translated document requests to all parties." (*Id.*) Responses were also to be "provided to Ms. Hoffman, who shall translate such responses and provide them to the parties." (*Id.*) Judge Hughes also permitted Defendants to re-file their motion to dismiss with a brief and supporting affidavits. (*Id.*)

**\*2** On June 14, 2004, Defendants filed a letter brief and affidavit in support of their motion to dismiss. Both the brief and affidavit were signed by Ms. Descamps. Mr. Perrod also filed an affidavit in support of the motion. (Perrod Aff., July 2, 2004.) In response to Plaintiff's subsequent opposition brief, Ms. Descamps filed an additional affidavit on June 30, 2004. According to her supplemental affidavit, "I have read the brief and declarations submitted by Plaintiff" and, "having read their papers, I believe my affidavit and that of my husband support that we did not and cannot fairly be said to have anticipated being hauled into court in the State of New Jersey." (Descamps Aff. ¶ 2, June 30, 2004.) Ms. Descamps further stated that "my husband and I ... are unable to afford a New Jersey lawyer[,] ... do not speak the language and have had to rely on the services of Ms. Hoffman as a translator." (*Id.* ¶ 32.) On June 30, 2004, Ms. Descamps also filed a letter requesting that the Court decide Defendants' motion to dismiss based on the submissions by the parties. In that letter, Ms. Descamps stated that "I am the Defendant pro se" in this matter and that "[m]y husband and I have not been able to afford a New Jersey lawyer to represent us and we cannot afford at this time to appear in court in New Jersey to contest the Court's personal jurisdiction over us." (Descamps Letter, June 30, 2004.) On July 14, 2004, the Court denied Defendants' motion to dismiss. (Mem.Op., July 14, 2004.)

**\*2** Defendants subsequently filed an answer to Plaintiff's complaint on July 27, 2004. Defendants' answer was signed by both Ms. Descamps and Mr. Perrod individually as "Defendants *prose* [sic]". In their answer, Defendants asserted a counterclaim for breach of contract against Plaintiff for their alleged failure to pay Ms. Descamps for her services. (Answer ¶ ¶ 43-51.) Plaintiff filed an answer to Defendants' counterclaim on August 9, 2004.

**\*2** On October 15, 2004, Judge Hughes conducted an initial scheduling conference with the parties.

Appearing by telephone were Plaintiff's counsel, *pro se* Defendants and Ms. Hoffman, who again served as an interpreter for Defendants. Pursuant to that conference, Judge Hughes set deadlines for discovery by the parties and scheduled a final pre-trial conference for May 25, 2005. (Order, October 18, 2004.) Judge Hughes specifically noted that "[s]ince all dates set forth herein are established with the assistance and knowledge of counsel, there will be no extensions except for good cause shown and by leave of Court, even with consent of all counsel...." (*Id.* ¶ 20.) Judge Hughes further ordered that "[f]ailure to appear at subsequent conferences, or to comply with any of the terms of this Order, may result in sanctions." (*Id.* ¶ 21.)

**\*3** Over the course of the next several months, the parties negotiated a potential settlement of the case. It eventually appeared that they reached settlement, and on December 16, 2004, the Court dismissed the case as settled. (Order, December 16, 2004.) On February 11, 2005, Plaintiff moved to vacate the Court's dismissal. According to Plaintiff, "the parties differed on what they believed were essential terms of the settlement, and thus, were unable to consummate the settlement." (Br. in Supp. of Pl.'s Mot. for Relief from Order of Dismissal at 2.)

**\*3** On February 28, 2005, Ms. Descamps filed a letter and affidavit in opposition to Plaintiff's motion to vacate the Court's dismissal. In her letter, Ms. Descamps opposed Plaintiff's motion, but alternatively requested that the Court apply French law in adjudicating the case if Plaintiff's motion were granted. (Descamps Letter at 1, February 28, 2005.) According to the letter, "[w]e will submit the affidavit of a French expert if French law applies" in support of Defendants' case. (*Id.*) On March 10, 2005, the Court granted Plaintiff's motion to vacate dismissal and referred the matter to Judge Hughes "to confer with the parties as to the further progress of the case whether by settlement, negotiations, motion practice and/or discovery." (Order, March 10, 2005.)

**\*3** On March 21, 2005, Judge Hughes conducted a telephone conference with the parties for the purpose of negotiating settlement again. Appearing during the conference were Plaintiff's counsel, Ms. Descamps and Ms. Hoffman. (*See* Order, March 21, 2005.) Pursuant to the conference, Judge Hughes set a case management schedule that would apply if the parties did not settle the case by March 31, 2005. Specifically, Judge Hughes ordered that discovery be completed by May 31, 2005, that the proposed final pretrial order be submitted by June 30, 2005, and that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 469953 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

the peremptory trial date be scheduled for July 19, 2005. (*Id.*)

**\*3** The parties did not settle the case, and on June 29, 2005, Judge Hughes conducted another telephone conference with the parties. Appearing during the conference were Plaintiff's counsel, Ms. Descamps and Ms. Hoffman. (*See* Order, June 29, 2005.) Pursuant to the conference, Judge Hughes ordered that the parties submit their lists of witnesses and exhibits to be relied on at trial by July 8, 2005. (*Id.*) Judge Hughes further ordered that *"FAILURE TO COMPLY WITH THIS ORDER SHALL RESULT IN ENTRY OF DEFAULT JUDGMENT."* (*Id.* (emphasis in original).) Plaintiff submitted its list of witnesses and exhibits on July 8, 2005. On July 11, 2005, Judge Hughes issued the final pretrial order. Defendants had not submitted their list of witnesses and exhibits as of the date of the pretrial order.

**\*3** On July 13, 2005, Judge Hughes again conducted a telephone conference with the parties. Appearing during the conference were Plaintiff's counsel, Ms. Descamps and Ms. Hoffman. (*See* Order, July 13, 2005.) Pursuant to that conference, Judge Hughes ordered that "in-person appearance is required for trial on July 19, 2005" unless the parties consented to trial via video conference and Ms. Descamps assumed the additional expenses associated with the video conferencing. (*Id.*) On July 18, 2005, the Court conducted another telephone status conference, at which Plaintiff's counsel and Ms. Hoffman appeared. Once again, the Court directed that the parties appear for trial. (*See* Minutes of Proceeding, July 18, 2005.)

**\*4** On July 19, 2005, the Court conducted a conference with Plaintiff's counsel, Defendants and an interpreter, Mr. Smith. (July 19, 2005 Tr. at 2-4.) Defendants did not appear in person and instead participated by telephone. (*Id.*) During that conference, the Court acknowledged receipt of a letter from Ms. Descamps that was faxed to the Court the day before. (*Id.* at 6) Ms. Descamps' letter indicated that she was physically unable to attend the scheduled trial as a result of mental and psychological issues. (*Id.*) In her letter, Ms. Descamps stated that "I could have defaulted but I made every effort to comply with the Court's orders but I cannot physically and psychologist [sic] attend and defend myself." (*See* Descamps Letter, July 20, 2005.) Included with Ms. Descamps' letter was a letter from her doctor concerning her inability to travel to the United States. (July 19, 2005 Tr. at 7.)

**\*4** To accommodate Ms. Descamps, the Court

adjourned the trial for the following day. (*Id.* at 11.) Appearing on July 20, 2005 were Plaintiff's counsel, Defendants and the interpreter, Mr. Smith. (July 20, 2005 Tr. at 3.) Defendants again participated by telephone. (*Id.*) During the conference, Ms. Descamps expressed her intent to attend trial, stating that "if I really was not intending to come to the trial, I wouldn't have done all the work that I have done for it." (*Id.* at 8.) When asked by the Court when she would be well enough to appear for trial, Ms. Descamps stated that "I can't give you an exact time without speaking to my doctor." (*Id.* at 9.) The Court indicated to Ms. Descamps that "[t]he Court has many cases" and that it had "set aside this week and next week for your trial." (*Id.*) The Court instructed Ms. Descamps to confer with her doctor and scheduled another telephone conference for July 21, 2005. (*Id.* at 11.)

**\*4** On July 21, 2005, the Court conducted a telephone conference with the parties. Appearing for the conference were Plaintiff's counsel, Defendants, Ms. Descamps' doctor and the interpreter, Mr. Smith. (July 21, 2005 Tr. at 3.) During the conference, the Court asked the doctor when Ms. Descamps would be ready to appear at trial.

**\*4** THE COURT: The question is, will she be able to travel to the United States in time to participate in the trial on August the 25th, sum [sic] five weeks from now?

**\*4** DOCTOR: The-I'm not really able to answer that question at this time but my impression is that at the end of August, the 25th of August, she will not be able to travel to the United States.

**\*4** THE COURT: Would it be wise to ask you to report back in two weeks as to whether or not she will be able to come here to participate in the trial on the 25th of August?

**\*4** DOCTOR: I could only give you an answer of a medical nature. Two weeks from now I could tell how she's doing, but I'm not sure that I could tell you yes or no. I'm not sure that I would be perfectly capable of doing that.

**\*5** THE COURT: What I'm going to do is, I'm going to adjourn this conference until 10:00 a.m. eastern standard time on August the 3rd. The plaintiff will set up the conference call. At that time I will hear from the doctor and the parties concerning whether I should adjourn the trial scheduled for August 25th or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 469953 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

whether it can go forward.

**\*5** (*Id.* at 4-6.)

**\*5** On August 3, 2005, the Court conducted the scheduled telephone conference. Appearing during the conference were Plaintiff's counsel, the president of Hampton Forge, Defendants, Ms. Descamps' doctor and the interpreter. (August 3, 2005 Tr. at 2.) During the conference, Ms. Descamps' doctor stated that "I'm afraid that given the signs and symptoms from which she's suffering, especially the mental harassment around the issue of trial, I'm afraid that her health will not permit her to participate in that trial." (*Id.* at 3.) The Court then sought to determine whether Defendants would appear for trial.

**\*5** THE COURT: Are you refusing to return to the United States for trial, yes or no?

**\*5** MS. DESCAMPS: Yes, I've been insulted by Hampton Forge. I've been defamed to my clients by Hampton Forge. I've been morally harassed by Hampton Forge.

**\*5** THE COURT: So, then your answer is, that you refuse to come, not because you're sick, but because you do not wish to come, correct?

**\*5** MS. DESCAMPS: Yes, I am sick, and you can see that now I can't even answer you correctly or properly.

**\*5** THE COURT: Well, I'm trying to understand whether you are refusing to come to court because you don't want to come, or because you are sick, which is it?

**\*5** MS. DESCAMPS: In total, I don't understand the American court system, how do you expect me to defend myself in front of an American court?

**\*5** THE COURT: Let me see if I understand this now. Even if your doctor told you that you were well enough to travel to the United States, you still would not come, correct?

**\*5** MS. DESCAMPS: I can't tell you right now, because I'm sick. And I want to be judged in France.

**\*5** THE COURT: It appears that the defendant has taken several inconsistent positions here. She has participated in this trial and stated her intent to appear. She then said she couldn't participate because she could not afford it. The plaintiff offered to pay her expenses and that of her co-defendant. She then said she could not participate because she was ill. I had her doctor on the phone to find out when she

would be well enough to proceed. And now she indicates that she would not appear even if she were not ill, and even if the plaintiff paid her expenses. I think at this point I should ask the defendant, Descamps, exactly what is her position at the present time. You may answer.

**\*5** MS. DESCAMPS: I don't understand-how the Court has been able to apply United States law in France. I'm not in a physical or mental state to be able to defend myself in this trial.... I've never recognized the jurisdiction of the American court. But, I accept it in deference to the Court....

**\*6** MR. ROTH: I'm still unclear, Your Honor, whether she's accepting the jurisdiction of the Court and whether she's going to attend. So, maybe we could just ask her those questions in two separate parts. Does she accept the jurisdiction of the American Court?

**\*6** MS. DESCAMPS: No, I do not accept the jurisdiction of the Court.

**\*6** THE COURT: And do I understand that Ms. Descamps does not intend to appear before this Court whether she's well or sick, whether someone pays her way or not, is that correct?

**\*6** MS. DESCAMPS: But, I am sick. I am sick.

**\*6** (August 3, 2005 Tr. at 6-7, 9-11.) The Court then questioned Mr. Perrod, who had not asserted that he was ill, to determine whether he intended to appear for trial. **\*6** THE COURT: Will you appear at the trial in New Jersey, yes or no?

**\*6** MR. PERROD: Absolutely not.

**\*6** THE COURT: All right. Do you accept the jurisdiction of this Court, yes or no?

**\*6** MR. PERROD: No, I don't.

**\*6** (*Id.* at 12.)

**\*6** Based on these exchanges with Defendants, the Court ordered that the August 25, 2005 trial date be adjourned because Defendants "stated on the record that they will not attend trial on August 25, 2005...." (Order, August 4, 2005.) The Court further ordered that "Plaintiff submit its application for default judgment by August 22, 2005". (*Id.*) The Court also ordered that "Defendants may file a response by

Not Reported in F.Supp.2d                                                                Page 5
Not Reported in F.Supp.2d, 2006 WL 469953 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

September 8, 2005, and Plaintiff may file a reply brief by September 15, 2005", and that "[t]he matter will be decided on the papers, unless otherwise notified by the Court." (*Id.*)

*6 On August 29, 2005, Plaintiff moved for entry of default judgment. Defendants have not filed papers in opposition to Plaintiff's motion. On September 13, 2005, Ms. Hoffman moved for sanctions against Plaintiff and its attorneys. On October 24, 2005, Plaintiff filed a brief in opposition to Ms. Hoffman's motion and cross-moved for sanctions against her. These three motions are now before the Court.

*6 In addition, three motions filed prior to the original trial date currently remain on the docket. On July 11, 2005, Plaintiff filed a motion seeking to bar Defendants from arguing that foreign law applies in this case. On July 14, 2005, Plaintiff moved for summary judgment of Defendants' counterclaim. On July 20, 2005, Defendants cross-moved for summary judgment of Plaintiff's claims. On July 20, 2005, the Court decided that it would consider the summary judgment motions as motions for judgment as a matter of law pursuant to <u>Federal Rules of Civil Procedure Rule 50</u>. (July 20, 2005 Tr. at 10.) The Court will therefore address these motions as well.

## II. DISCUSSION

### A. Plaintiff's Motion for Entry of Default Judgment

#### 1. Default Judgment Pursuant to Rule 55

*6 Default judgment pursuant to Rule 55 may be appropriate where a party fails to appear for trial. In <u>Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912 (3d Cir.1992)</u>, the Third Circuit Court of Appeals noted that according to the language of Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend* as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." <u>Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 917 (3d Cir.1992)</u> (quoting <u>Fed.R.Civ.P. 55(a)</u>) (italics in original). The court observed that "[b]y its very language, the 'or otherwise defend' clause is broader than the mere failure to plead." *Id.* According to the court, "[t]he failure to plead is no greater an impediment to the orderly progress of a case than is the failure to appear at trial or meet other required

time schedules, and we see no reason why the former would be subject to a sanction not equally applicable to the latter." *Id.* at 918. The court cited a number of cases in other circuits supporting the proposition that "the district court's power to maintain an orderly docket justifies the entry of a default against a party who fails to appear at trial." *See id.; <u>Brock v. Unique Racquetball & Health Clubs, 786 F.2d 61, 64 (2d Cir.1986)</u>* ("a trial judge, responsible for the orderly and expeditious conduct of litigation, must have broad latitude to impose the sanction of default for non-attendance occurring after a trial has begun"); <u>Ringgold Corp. v. Worrall, 880 F.2d 1138, 1141 (9th Cir.1989)</u> (affirming <u>Rule 55</u> default judgment against plaintiff on defendant's counterclaims where plaintiff did not attend pretrial conferences and "fail[ed] to attend on the first day of a trial scheduled months before"); <u>Ad West Mktg., Inc. v. Hayes, 745 F.2d 980, 983-84 (5th Cir.1984)</u> (affirming <u>Rule 55</u> default against cross-defendants who failed to file answers or appear on scheduled trial date); <u>Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, 740 F.2d 1499, 1512 (11th Cir.1984)</u> ("The failure to appear at a duly scheduled trial after months of preparation by the parties and by the trial court is a serious offense for which the entry of a default [under <u>Rule 55</u>] is appropriate"); <u>Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.1981)</u> (defendant's "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial were sufficient to support a finding that he had 'failed to plead or otherwise defend' under <u>Federal Rule of Civil Procedure 55</u>").

*7 Here, Defendants failed to appear for the trial scheduled for July 19, 2005. During the conference with the parties conducted on August 3, 2005, and after the Court had rescheduled the trial for August 25, 2005, Defendants informed the Court that they would not be appearing for a rescheduled trial even if Plaintiff paid their travel expenses. Based on Defendants' refusal to attend trial in this matter, the Court finds that the entry of default judgment pursuant to <u>Rule 55</u> is appropriate in this case.

#### 2. Default Judgment as a Sanction

*7 The Third Circuit Court of Appeals has instructed that courts deciding motions for entry of default judgment as a sanction engage in a six-part analysis. "In deciding whether to impose a default, the district court must consider: (1) the extent of the party's personal responsibility; (2) the prejudice to the

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 469953 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party [or] the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Hoxworth,* 980 F.2d at 919 (citing *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 868 (3d Cir.1984)). These factors "should be weighed by the district courts in order to assure that the 'extreme' sanction of dismissal or default is reserved for the instances in which it is justly merited." *Poulis,* 747 F.2d at 870. In applying this test, however, "[e]ach factor need not be satisfied for the trial court to dismiss a claim." *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 221 (3d Cir.2003).

### a. Defendants' Personal Responsibility

**\*7** Defendants have litigated this matter *pro se* since the beginning of this case. Defendants have filed and signed a number of pleadings, motions, briefs and affidavits in their own names as *pro se* litigants. Indeed, Defendants have repeatedly attested to their *pro se* representation. For example, their answer was signed by both Ms. Descamps and Mr. Perrod individually as "Defendants *prose* [sic]". In support of Defendants' motion to dismiss, Ms. Descamps filed a supplemental affidavit stating that "my husband and I ... are unable to afford a New Jersey lawyer[,] ... do not speak the language and have had to rely on the services of Ms. Hoffman as a translator." (Descamps Aff. ¶ 32, June 30, 2004.) Mr. Perrod also filed an affidavit in support of Defendants' motion, which affidavit addressed a number of factual assertions made in Plaintiff's opposition papers. (Perrod Aff., July 2, 2004.) Moreover, Ms. Descamps and Mr. Perrod have appeared during numerous telephone conferences conducted by the Court, with Ms. Hoffman appearing only in the capacity of interpreter for Defendants and to assist in settlement discussions. (Hoffman Aff. ¶ 2, September 13, 2005 ("I agreed to represent [Defendants] in settlement discussions only and informed them that I was not admitted to practice in New Jersey").) During these telephone conferences, Defendants were repeatedly reminded that they were to appear for trial, originally scheduled for July 19, 2005, then adjourned to August 25, 2005. It was not until August 3, 2005 that Defendants informed the Court that they would not appear for trial regardless of Ms. Descamps' condition. Based on these facts, Defendants are personally responsible for their delays

and nonattendance at trial.

### b. Prejudice to Plaintiff

**\*8** Plaintiff filed its complaint more than two (2) years ago. Since then, Plaintiff has engaged in extensive discovery, briefing and settlement negotiations. Plaintiff appeared for trial on July 19, 2005. Plaintiff also appeared for a number of conferences that resulted from Defendants' nonattendance at the trial scheduled for July 19, 2005. To accommodate Defendants, the Court rescheduled the trial for August 25, 2005, only to adjourn it because Defendants indicated that they would not appear for trial.

**\*8** In anticipation of the original and rescheduled trial dates, Plaintiff incurred various costs, including: making witnesses available for trial; arranging for a translator for purposes of scheduling and conducting the trial; arranging for international conference calls for the purpose of scheduling the trial and related matters; paying attorneys' fees in preparing for trial; and being distracted from the ordinary course of its business. *See Hoxworth,* 980 F.2d at 921 ("the prejudice flowing from failure to proceed with a scheduled trial after the case had been pending for more than three years is apparent"). Defendants' failure to appear for trial, and their delay in notifying the Court of that fact, was prejudicial to Plaintiff.

### c. History of Dilatoriness

**\*8** The trial date was set for July 19, 2005 as early as March 21, 2005. (*See* Order, March 21, 2005.) The Court reserved two weeks for the scheduled trial. (*See* July 20, 2005 Tr. at 9.) Because of Ms. Descamps' illness, the Court rescheduled the trial for August 25, 2005. Defendants then waited until August 3, 2005 to inform the Court that they would not appear for trial, and only after the Court directly asked Defendants individually about their intentions. (August 3, 2005 Tr. at 6-12.) Defendants waited more than four (4) months after the original scheduling of the trial on March 21, 2005, and after trial had been already been rescheduled once, to inform the Court that they would not appear regardless of Ms. Descamps' medical condition.

**\*8** Defendants have been late or non-compliant in other respects as well. During discovery, Defendants failed to respond to Plaintiff's interrogatories. (Order, June 29, 2005.) Defendants also failed to submit

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 469953 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

information for preparing the final pretrial order, which information Judge Hughes ordered to be submitted by July 8, 2005. (*Id.*) Based on these facts, the Court finds that Defendants have demonstrated a history of dilatoriness.

### d. Willfulness and Bad Faith

**\*8** Defendants' failure to appear for trial appears to be willful and in bad faith. As the Court noted during the August 3, 2005 conference with the parties, Ms. Descamps has given several inconsistent positions concerning her intent to appear for trial. During that conference, and after being questioned by the Court, Ms. Descamps indicated that she did not accept the Court's jurisdiction and would not attend trial. (*See* August 3, 2005 Tr. at 7, 10.) Furthermore, Mr. Perrod stated that he refused to attend trial because he did not recognize the jurisdiction of the Court and believed that the dispute did not concern him. (*Id.* at 12.) Defendants' reasons for refusing to attend trial in the United States were applicable at the commencement of this action, yet they waited until August 3, 2005 to inform the Court of their refusal, and only after questioning by the Court.

**\*9** Based on these facts, Defendants' failure to appear for trial and delay in informing the Court of their planned absence were willful and in bad faith.

### e. Alternative Sanctions

**\*9** Alternative sanctions would not be effective in this case in light of the Court's repeated but failed efforts to accommodate Defendants and their admitted refusal to attend trial. Defendants were aware of the July 19, 2005 trial date approximately four (4) months in advance. (*See* Order, March 21, 2005.) On July 13, 2005, Judge Hughes ordered that "in-person appearance is required for trial on July 19, 2005" unless Defendants arranged for trial via video conference. (Order, July 13, 2005.) During the telephone status conference conducted on July 18, 2005, the Court directed the parties to appear for trial. (Minutes of Proceeding, June 18, 2005.) Despite the Court's repeated instructions, Defendants failed to appear for trial on June 19, 2005. Moreover, after the Court had rescheduled the trial for August 25, 2005, Defendants admitted to the Court that they did not plan to attend. (August 3, 2005 Tr. at 6-12.) At this point, the only effective sanction against Defendants would be the entry of default judgment.

### f. Meritoriousness of the Claim or Defense

**\*9** "In considering whether a claim or defense appears to be meritorious for this inquiry ... [a] claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis,* 747 F.2d at 869-70. *See also Hoxworth,* 980 F.2d at 922 ("We decline to require the district court to have a mini-trial before it can impose a default").

**\*9** Plaintiff alleges that "[i]n or about February 2000, Hampton Forge engaged Defendants to assist in designing flatware for sale" and that it "provided Defendants with travel, training, advice, expenses and education so that [Ms. Descamps] could develop such designs." (Compl.¶ 13.) According to Plaintiff, "[i]n exchange for Agnes Descamps' work, Hampton Forge agreed to compensate Defendants" and that "[s]uch compensation has been paid to Defendants." (*Id.* ¶ 14.) Plaintiff further alleges that "Defendants have claimed that Hampton Forge's works belong to them and not Hampton Forge." (*Id.* ¶ 15.) These allegations, if proven at trial, would support Plaintiff's recovery against Defendants.

### 3. Determination of Damages

**\*9** In entering a default judgment, "[i]f the damages are not for a 'sum certain or for a sum which can by computation be made certain,' ' ... "the 'court may conduct such hearings or order such references as it deems necessary and proper." ' *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir.1990) (quoting Fed.R.Civ.P. 55(b)(1) and (b)(2)). Here, Plaintiff seeks both injunctive and monetary relief for Defendants' breach of contract. The amount of damages that should be awarded in this case has not been calculated and remains uncertain. The Court will therefore order a hearing to determine the amount of damages to be awarded to Plaintiff.

### B. Ms. Hoffman's Motion for Sanctions

**\*10** On September 14, 2005, Ms. Hoffman filed a motion seeking sanctions against Plaintiff and its counsel pursuant to Federal Rules of Civil Procedure Rules 11 and 45(c)(1). According to Ms. Hoffman, Plaintiff and its counsel: (1) served a frivolous subpoena upon her; (2) harassed and intimidated Defendants; and (3) made frivolous arguments during

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 469953 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

the course of litigating this case. (Hoffman Aff. ¶ ¶ 3, 5, 8, September 13, 2005.)

**\*10** The Court notes at the outset that Ms. Hoffman is neither a party to this case nor counsel to Defendants. According to Ms. Hoffman, "I agreed to represent [Defendants] in settlement discussions only and informed them that I was not admitted to practice in New Jersey." (*Id.* ¶ 2.) Ms. Hoffman further states in her affidavit that "[b]ecause I am not admitted to the bar of the State of New Jersey I cannot move for sanctions against [Plaintiff's counsel] other than in the context of this subpoena...." (*Id.* ¶ 7.) Ms. Hoffman urges the Court, however, to sanction Plaintiff and its counsel "on its own motion." (Hoffman Br. at 5.)

**\*10** Sanctions against Plaintiff and its counsel would be inappropriate on the basis of Ms. Hoffman's subpoena. Rule 45(c)(1) provides that:
**\*10** A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

**\*10** Fed.R.Civ.P. 45(c)(1).

**\*10** Plaintiff subpoenaed Ms. Hoffman because she participated in the settlement conferences between the parties, and Plaintiff believed that Defendants planned to raise those negotiations as an issue during trial. Indeed, the final pretrial order that Judge Hughes issued on July 11, 2005, included Ms. Hoffman as a potential witness:
**\*10** Depending on the Court's ruling on the admissibility of settlement discussions and negotiations between the parties offered by defendants, plaintiff additionally reserves the right to rely on the following witnesses:
**\*10** Glen H. Torregiani, Esq.
**\*10** Barbara Hoffman, Esq.

**\*10** (Pretrial Order at 3, July 11, 2005.) Plaintiff later withdrew its subpoena on Ms. Hoffman when it appeared that her testimony would be unnecessary. In a letter dated July 14, 2005, Plaintiff's counsel informed Ms. Hoffman that "[b]ased on you and your client's statements during yesterday's conferences before Judge Hughes, as well as your comments to me regarding the scope of your factual knowledge,

we are withdrawing the trial subpoena we previously served upon you...." (Dunham Decl. Ex. I.) In another letter dated the same day, Plaintiff's counsel asked Ms. Hoffman to "please confirm that you have received my withdrawal of the trial subpoena served upon you." (Dunham Decl. Ex. J at 2.) Based on the legitimate basis of Plaintiff's subpoena and its withdrawal five (5) days prior to trial, sanctions for issuing the subpoena on Ms. Hoffman is inappropriate.

**\*11** Ms. Hoffman also seeks sanctions against Plaintiff and its counsel pursuant to Rule 11, which provides:
**\*11** (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation....
**\*11** (1)(B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

**\*11** Fed.R.Civ.P. 11(c).

**\*11** Ms. Hoffman alleges that Plaintiff harassed and intimidated Defendants and made frivolous arguments throughout the course of this case. These allegations, however, are largely conclusory. Ms. Hoffman alleges only two specific acts of misconduct by Plaintiff or its counsel: (1) sending a letter dated July 6, 2005 to Defendants' client concerning the lawsuit; and (2) referring in its brief to a letter by Ms. Hoffman dated July 14, 2005 that did not in fact exist. (Hoffman Decl. ¶ ¶ 5, 7, September 13, 2005.) Ms. Hoffman fails to provide evidence supporting her assertions. Without more, these assertions are insufficient to permit sanctions pursuant to Rule 11 against Plaintiff or its counsel. Ms. Hoffman's motion is denied.

### C. Plaintiff's Cross-Motion for Sanctions Against Ms. Hoffman

**\*11** Plaintiff has cross-moved for sanctions pursuant to Rule 11 against Ms. Hoffman. According to Plaintiff, Ms. Hoffman's motion for sanctions was frivolous and therefore warrants sanctions. Although the Court denies Ms. Hoffman's motion, Ms.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 469953 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

Hoffman's motion does not appear sufficiently frivolous to justify sanctions. Plaintiff's cross-motion for sanctions is denied.

### III. CONCLUSION

*11 For the reasons set forth above: (1) Plaintiff's motion for entry of default judgment is granted; (2) Ms. Hoffman's motion for sanctions against Plaintiff and its counsel is denied; and (3) Plaintiff's cross-motion for sanctions against Ms. Hoffman is denied. In light of the Court's grant of Plaintiff's motion for entry of default judgment, the Court dismisses as moot: (1) Plaintiff's motion to bar Defendants from arguing that foreign law applies in this case; (2) Plaintiff's motion for summary judgment of Defendants' counterclaim; and (3) Defendants' cross-motion for summary judgment of Plaintiff's claims. An appropriate form of order is filed herewith.

D.N.J.,2006.
Hampton Forge, Ltd. v. Descamps
Not Reported in F.Supp.2d, 2006 WL 469953 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3171672 (Trial Motion, Memorandum and Affidavit) Plaintiff Hampton Forge, Ltd.'s Brief in Opposition to Barbara Hoffman's Motion for Sanctions and in Support of Hampton Forge, Ltd.'s Cross Motion for Sanctions Against Barbara Hoffman (Oct. 24, 2005)
• 3:03cv04500 (Docket) (Sep. 22, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.